IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| IRH VINTAGE PARK PARTNERS, LP, | § | CASE NO. 10-37503-H4-11 |
| | § | |
| | § | |
| VPI GENERAL PARTNER, LLC, | § | |
| | § | |
| VINTAGE PARK INVESTMENTS, LLC, | § | Jointly Administered |
| | § | |
| | § | Chapter 11 |
| DEBTORS | § | |

FIRST AMENDED PROPOSED JOINT DISCLOSURE STATEMENT UNDER
11 U.S.C. § 1125 AND BANKRUPTCY RULE 3016 IN SUPPORT
OF JOINT PLAN OF REORGANIZATION OF DEBTORS

THIS FIRST AMENDED JOINT DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTORS ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE DEBTORS' PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE AS TO THE DEBTORS' PLAN OF REORGANIZATION. ALL CREDITORS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.

ON _____, THE BANKRUPTCY COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE. SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND ATTACHED AS EXHIBIT A, IS BEING SOUGHT FROM CREDITORS WHOSE CLAIMS AGAINST THE DEBTORS ARE IMPAIRED UNDER THE PLAN OF REORGANIZATION. CREDITORS ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE BALLOT INCLUDED WITH THIS DISCLOSURE STATEMENT UPON COMPLETION IN THE ENVELOPE ADDRESSED TO HOOVER SLOVACEK LLP., ATTENTION: EDWARD L. ROTHBERG, 5847 SAN FELIPE, SUITE 2200, HOUSTON, TEXAS 77057, NOT LATER THAN _____, AT __:__. . _____.M. HOUSTON TIME.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... 1

DISCLOSURE STATEMENT ................................................................................... 3

I.    INTRODUCTORY STATEMENT ..................................................................... 3

II.   VOTING PROCEDURES ................................................................................... 5

III.  IMPAIRMENT OF CLAIMS ............................................................................. 6

IV.  NATURE AND HISTORY OF BUSINESS ...................................................... 8

    A.   SOURCE OF INFORMATION AND ACCOUNTING METHOD .................................. 8
    B.   GENERAL INFORMATION ABOUT THE DEBTORS ............................................. 8
       1.   The Debtors ......................................................................................... 8
          a.   Business Operation Model ........................................................ 8
          b.   Assets ....................................................................................... 9
          c.   Liabilities ................................................................................ 9
       2.   Financial Difficulties and Restructuring ............................................ 10
       3.   Financial Situation as of Petition Date ............................................... 10
       4.   Ownership and Management ............................................................... 10
          a.   General Overview .................................................................. 11
          b.   Capital Structure ................................................................... 11
          c.   Current Management Team .................................................... 11
       5.   Significant Actions in Bankruptcy Case ............................................. 12
          a.   Voluntary Petition filing ....................................................... 12
          b.   Administration – "First Day" Motions .................................. 12
          c.   Employment of Professional Persons .................................... 13
          d.   Other Relevant Pleadings ...................................................... 13
    C.   CASE MANAGEMENT GOING FORWARD ....................................................... 13
       1.   Plan Negotiations ............................................................................... 13
       2.   Assumption and Rejection ................................................................. 13

V.   DESCRIPTION OF PLAN ................................................................................ 14

    A.   OVERALL STRUCTURE OF THE PLAN ........................................................... 14
    B.   ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS AND TIMING OF PAYMENT ....... 16
    C.   CLASSES OF SECURED AND UNSECURED CLAIMS AND TREATMENT OF INTERESTS ............ 16
    D.   MEANS OF EXECUTION OF PLAN: ............................................................... 19
    E.   BAR DATES ............................................................................................... 20
    F.   SUMMARY OF FINANCIAL PROJECTIONS ...................................................... 20

VI.  LIQUIDATION ANALYSIS .............................................................................. 21

    A.   METHODOLOGY. ....................................................................................... 21
    B.   ANALYSIS. ................................................................................................ 21

VII.  RISKS POSED TO CREDITORS ...................................................................... 22

VIII.   ALTERNATIVES ........................................................................................ 22

    A.   CONVERSION TO CHAPTER 7 ...................................................................... 22
    B.   DISMISSAL .............................................................................................. 22
    C.   NO ASSURANCE OF EITHER ....................................................................... 23

IX.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES ....................... 23

    A.   TAX CONSEQUENCES TO CREDITORS .......................................................... 23
        1.   Generally .......................................................................................... 23
        2.   Unsecured Claims .............................................................................. 23

X.   PREFERENCES AND FRAUDULENT TRANSFERS ............................... 24

XI.   LITIGATION ............................................................................................... 24

XII.   MANAGEMENT OF THE REORGANIZED DEBTOR .......................... 24

    A.   DIRECTORS OF THE DEBTORS .................................................................... 24
    B.   MANAGEMENT COMPENSATION ................................................................. 25

XIII.   ACCEPTANCE AND CONFIRMATION OF THE PLAN ...................... 25

    A.   ACCEPTANCE OF THE PLAN ....................................................................... 25
    B.   CONFIRMATION WITHOUT ACCEPTANCE OF ALL IMPAIRED CLASSES ............... 25
    C.   OTHER REQUIREMENTS FOR CONFIRMATION .............................................. 26
        1.   Best Interest of Creditors .................................................................. 26
        2.   Financial Feasibility ......................................................................... 26
    D.   CRAM-DOWN - CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES ...... 27

IV.   CONCLUSION ............................................................................................. 27

## DISCLOSURE STATEMENT

IRH Vintage Park Partners, LP ("IRH"), VPI General Partner, LLC ("VP GP"), and Vintage Park Investments, LLC. ("VPI") (collectively "Debtors"), debtors and debtors-in-possession herein, submit this First Amended Joint Disclosure Statement ("Disclosure Statement") under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 in Support of their Chapter 11 Plan of Reorganization to all of their known Creditors.

## I.      INTRODUCTORY STATEMENT

Debtors submit this First Amended Joint Disclosure Statement Under 11 U.S.C. § 1125 in support of their Chapter 11 Plan of reorganization under Chapter 11 of the United States Bankruptcy Code (the "Disclosure Statement") in connection with its solicitation of acceptances of the Joint Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code filed by the Debtors (the "Plan"). A copy of the Plan is attached as Exhibit A for your review. All terms used in this Disclosure Statement but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

The Debtors each filed petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division, on September 2, 2010 and retained Edward L. Rothberg and Hoover Slovacek LLP as bankruptcy counsel. The Debtors have prepared this Disclosure Statement to disclose that information which, in their opinion, is material, important, and necessary to an evaluation of the Plan. Pursuant to the terms of the United States Bankruptcy Code, this Disclosure Statement must be presented to and approved by the Bankruptcy Court. Such approval is that required by statute and does not constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

The material herein contained is intended solely for the use of known creditors and interest holders of the Debtors, and may not be relied upon for any purpose other than a determination by them of how to vote on the Plan. As to Contested Matters, Adversary Proceedings and other actions or threatened actions, this disclosure statement shall not constitute or be construed as an admission of any fact or liability, stipulation or waiver, but rather as a statement made in settlement negotiations under Rule 408 of the Federal Rules of Evidence. This disclosure statement shall not be admissible in any non-bankruptcy proceeding nor shall it be construed as to be advice on the tax, securities or other legal effects of the plan as to the holders of claims against or equity interests in the Debtors or their affiliates.

To ensure compliance with Treasury department circular 230, each holder of a claim or interest is hereby notified that: (a) any discussion of U.S. Federal Tax issues in this disclosure statement is not intended or written to be relied upon, and cannot be relied upon, by any holder for the purpose of avoiding penalties that may be imposed upon a holder under the Tax Code; (b) such discussion is included hereby by the Debtors in connection with the promotion or marketing (within the meaning of Circular 230) by the Debtors of the transactions or matters addressed herein; and (c) each holder should seek advice based upon its particular circumstances from an independent tax advisor.

Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While the Debtors have made every effort to retain the meaning of such other instruments or the portions transposed, it urges that any reliance on the contents of such other instruments should depend on a thorough review of the instruments themselves.

No representations concerning the Debtors or the Plan are authorized other than those that are set forth in this Disclosure Statement. Any representations or inducements made by any person to secure your vote which are other than those contained herein should not be relied upon, and such representations or inducements should be reported to counsel for the Debtors who shall deliver such information to the Bankruptcy Court. Finally, all terms not otherwise defined in this Disclosure Statement shall have the meanings assigned to them under the Plan.

Creditors should read this Joint Disclosure Statement in its entirety prior to voting on the Plan. No solicitation of votes on the Plan may be made, except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No other party has been authorized to utilize any information concerning the Debtor or its affairs, other than the information contained in this Disclosure Statement, to solicit votes on the Plan. Creditors and holders of equity interest should not rely on any information relating to the Debtors, other than that contained in this Disclosure Statement and the exhibits attached hereto.

**EXCEPT AS SET FORTH IN THIS JOINT DISCLOSURE STATEMENT AND THE ATTACHMENTS, NO REPRESENTATIONS CONCERNING THE DEBTORS, THE ASSETS, THE PAST OPERATIONS OF THE DEBTORS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS.**

**EXCEPT AS SPECIFICALLY NOTED, THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS ARE NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY. THE FACTUAL INFORMATION REGARDING THE DEBTORS, INCLUDING THE ASSETS AND LIABILITIES OF THE DEBTORS, HAS BEEN DERIVED FROM NUMEROUS SOURCES, INCLUDING, BUT NOT LIMITED TO, DEBTORS' BOOKS AND RECORDS, SCHEDULES AND DOCUMENTS SPECIFICALLY IDENTIFIED HEREIN.**

**THE DEBTORS ALSO COMPILED THE INFORMATION CONTAINED IN THIS JOINT DISCLOSURE STATEMENT FROM RECORDS AVAILABLE TO THEM, INCLUDING, BUT NOT LIMITED TO, PLEADINGS AND REPORTS ON FILE WITH THE BANKRUPTCY COURT, LOAN AGREEMENTS AND BUSINESS RECORDS.**

**THE APPROVAL BY THE BANKRUPTCY COURT OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE**

BANKRUPTCY COURT OF THE PLAN OR A GUARANTY OF THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS JOINT DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

NEITHER THE DEBTORS NOR COUNSEL FOR THE DEBTORS CAN WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACIES. NEITHER THE DEBTORS NOR THEIR COUNSEL HAVE VERIFIED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, ALTHOUGH THEY DO NOT HAVE ACTUAL KNOWLEDGE OF ANY INACCURACIES.

IF THE REQUISITE VOTE IS ACHIEVED FOR EACH CLASS OF IMPAIRED CLAIMS, THE PLAN IS SUBSEQUENTLY CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN), WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

## II.    VOTING PROCEDURES

Any creditor of the Debtors whose claim is IMPAIRED under the Plan is entitled to vote, if either (1) the claim has been scheduled by the Debtors and such claim is not scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings, *provided, however*, any claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon motion by the creditor. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan. In addition, a creditor's vote may be disregarded if the Bankruptcy Court determines that the creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Holders of impaired claims who are entitled to vote and fail to do so will not be counted as either accepting or rejecting the Plan. Nevertheless, if the requisite vote is achieved for your class of impaired claims, you will be bound by the terms of the Plan.

A ballot to be used for voting to accept or reject the Plan is enclosed with this Joint Disclosure Statement and mailed to creditors entitled to vote. A creditor must (1) carefully review the ballot and the instructions thereon, (2) execute the ballot, and (3) return it to the address indicated thereon by the deadline to enable the ballot to be considered for voting proposes.

THE DEADLINE FOR RETURNING YOUR BALLOT
IS _____.M. CENTRAL TIME ON _____, 2010
(THE "VOTING DEADLINE").

After completion of the ballot, creditors should return the executed ballot in the self-addressed envelope to:

**IRH VINTAGE PARK PARTNERS, LP
VPI GENERAL PARTNER, LLC
VINTAGE PARK INVESTMENTS, LLC
c/o EDWARD L. ROTHBERG/KATHY MAYLE
HOOVER SLOVACEK LLP
5847 SAN FELIPE, SUITE 2200
HOUSTON, TX 77057**

**VOTING INFORMATION AND INSTRUCTION FOR COMPLETING THE BALLOT:**

**FOR YOUR VOTE TO BE COUNTED YOU MUST COMPLETE THE BALLOT, INDICATE ACCEPTANCE OR REJECTION OF THE PLAN IN THE BOXES INDICATED ON THE BALLOT AND SIGN AND RETURN THE BALLOT TO THE ADDRESS SET FORTH ON THE PRE-ADDRESSED ENVELOPE. IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.**

**IF YOU HOLD CLAIMS IN MORE THAN ONE CLASS UNDER THE PLAN, YOU MAY RECEIVE MORE THAN ONE BALLOT. EACH BALLOT YOU RECEIVE VOTES ONLY YOUR CLAIMS FOR THAT CLASS. PLEASE COMPLETE AND RETURN EACH BALLOT YOU RECEIVE. YOU MUST VOTE ALL OF YOUR CLAIMS WITHIN A SINGE CLASS UNDER THE PLAN TO EITHER ACCEPT OR REJECT THE PLAN. ACCORDINGLY, A BALLOT (OR MULTIPLE BALLOTS WITH RESPECT TO MULTIPLE CLAIMS WITHIN A SINGLE CLASS) THAT PARTIALLY REJECTS AND PARTIALLY ACCEPTS THE PLAN WILL NOT BE COUNTED.**

**THE BALLOT IS FOR VOTING PURPOSES ONLY AND DOES NOT CONSTITUTE AND SHALL NOT BE DEEMED A PROOF OF CLAIM OR INTEREST OR AN ASSERTION OF A CLAIM.**

### III.     IMPAIRMENT OF CLAIMS

A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interest of that class are modified under a plan. Modification for purposes of determining impairment however, does not include curing defaults and reinstating maturity or cash payment in full. Classes of claims or interests that are not "impaired" under a plan are conclusively presumed to have accepted the plan and are thus not entitled to vote. Classes of claims or interests receiving no distribution under a plan are conclusively presumed to have rejected the plan and thus are not entitled to vote. Acceptances of the Plan are being solicited only from

those persons who hold claims in an impaired class entitled to receive a distribution under the Plan.

Under Section 1124 of the Bankruptcy Code, a class of claims or interests is impaired under a plan, **unless**, with respect to each claim or interest of such class, the plan:

    1.    Leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest; or

    2.    Notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of its claim or interest after the occurrence of a default:

        (a)  Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Section 365(b)(2) of the Bankrupt Code;

        (b)  Reinstates the maturity of such claim or interest as it existed before the default;

        (c)  Compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

        (d)  Does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or interest; or

    3.    Provides that, on the Effective Date the holder of such claim or interest receives, on account of such claim or interest, cash, equal to:

        (a)  With respect to a claim, the allowed amount of such claim; or

        (b)  With respect to an interest, if applicable, the greater of:

            (i)  Any applicable fixed liquidation preference; or

            (ii)  Any fixed preference at which the Debtors, under the terms of the security, may redeem the security.

    4.    In Article 5 of the Plan, the Debtors have identified the impaired classes of creditors under the Plan. In the event there are questions regarding whether a person is in an impaired class, the person should assume that his or her claim is impaired and vote. If the claim is determined to be impaired, the vote will be considered by the Bankruptcy Court. The Class 2, 3, 4, 5 and 6 holders of claims and the Class 7 interest holders of the Debtors are impaired under the Plan.

IMPAIRED CREDITORS ANTICIPATED TO RECEIVE A DISTRIBUTION UNDER THE PLAN ARE BEING SOLICITED TO VOTE. IF YOU HOLD AN ADMINISTRATIVE CLAIM OR UNIMPAIRED CLAIM, THE DEBTORS ARE NOT SEEKING YOUR VOTE. ADDITIONALLY, THE VOTE OF EQUITY HOLDERS IS NOT SOLICITED AND IS DEEMED A REJECTION VOTE SINCE THEY RECEIVE NO DIVIDEND UNDER THE PROPOSED PLAN.

## IV.   NATURE AND HISTORY OF BUSINESS

### A.  Source of Information and Accounting Method

The Debtors' books are maintained under the supervision of Guy Savage, Vice-President and Rebecca K. Rosato, Controller. Accounting is on the accrual basis. The historical financial information contained in this disclosure statement as well as the bankruptcy schedules and statement of affairs was derived from the Debtors' books and records. **THE DEBTORS' BOOKS HAVE NOT BEEN AUDITED BY AN INDEPENDENT PUBLIC ACCOUNTANT (OTHER THAN AS EXPRESSLY DESCRIBED HEREIN). NO ABSOLUTE REPRESENTATION IS MADE AS TO THE ACCURACY OF THE DEBTORS' RECORDS. HOWEVER, THE DEBTORS HAVE ATTEMPTED TO ACCURATELY REFLECT THEIR BUSINESS OPERATIONS.**

### B.  General Information about the Debtors

#### 1. THE DEBTORS

##### a. Business Operation Model/Assets

IRH is a limited partnership that owns and operates a large 324 unit upscale gated apartment community located at 15727 Cutten Road, in northwest Houston ("Property"). IRH is owned by VP GP, its 1% general partner and VPI, its 99% limited partner. VPI is also the 100% equity holder of VP GP. The only business of these Debtors is the ownership and operation of the Property.

The Property was built in 2007 and is nestled on 13 acres of land laden with palm trees and tropical plants. Each apartment offers luxurious amenities such as open floor plans with vaulted ceilings, garden tubs, crown molding, fireplaces, intrusion alarms and marble tile. Additionally, the Property offers its residents use of a media room with stadium seating, state of the art fitness room, cyber café and copy room, tropical pool and spa, outdoor fireplace and cabana, and clubhouse with gourmet kitchen and Home Theater System. The Property offers six different floor plans of varying sizes from 814 sq feet to 1220 sq feet, with base monthly rent ranging from $1067-$1567 and up. Current occupancy rates range between 92-95%.

Vintage Park purchased the Property in 2007 for a total purchase price of approximately $46,250,000. Capmark Bank ("Capmark") is the Debtors' senior secured lender that financed $41,000,000 of the purchase price of the Apartments and Wrightwood Capital Lender, LP ("Wrightwood") also provided mezzanine financing in the amount up to

of $7,615,000, which was subsequently paid down to its current balance of approximately
$2.6 million in October 2007.

Shortly before the Petition Date, the Debtors obtained an appraisal of the Property.  The
value was set at $34.7 million.  Capmark believes the Property may have a higher value.
Therefore, Capmark is in the process of obtaining its own appraisal.  As discussed more fully
below, the Debtors have filed a motion requesting the Bankruptcy Court to determine the value if
no agreement thereon can be reached with Capmark.  Other than past due rents and intercompany
accounts, the only other significant assets owned by IRH which are disclosed on the schedules
are furniture, fixtures and equipment at book value.  The Debtors believe that the values of these
assets are subsumed in the $34.7 million appraisal.

The only asset owned by VP GP is its one percent general partnership interest in IRH.
The only assets owned by VPI are its 100% interests in IRH and VP GP>

### b.  Liabilities

The Debtor's liabilities on the petition date are set forth on the claims analysis attached as
Exhibit B.  Generally, these liabilities consisted of the following:

Secured Liabilities – IRH's primary secured creditor is Capmark Bank ("Capmark" or
"Senior Secured Lender").  As of the petition date, IRH was obligated to Capmark Bank in the
amount of approximately $41 million in connection with two notes executed by IRH in favor of
Capmark, the first in the original principal amount of $37,750,000 ("Note A"), and the second in
the original principal amount of $3,250,000 ("Note B") (collectively the "Capmark Loan").  The
Capmark Loan is secured by a lien on substantially all of IRH's assets.

Additionally, VPI is indebted to Wrightwood Capital Lender, LP ("Wrightwood Capital")
pursuant to a Mezzanine Loan Agreement made to VPI for the benefit of IRH (the "Wrightwood
Loan").   As of the Petition Date, the outstanding indebtedness owed to Wrightwood is
approximately $2.6 million.  The Wrightwood Loan is secured by a pledge of the limited
partnership interests of VPI in IRH. There is an intercreditor agreement between Capmark and
Wrightwood.  The only source of revenue to repay the Wrightwood loan is the revenue generated
by the Property.  Historically, the Wrightwood loan has been paid directly through IRH.

IRH also estimates ad valorem property tax claims for the year 2010 in the approximate
amount of approximately $820,000.  This amount is currently being escrowed as part of the
Capmark Loan.

Priority Tax Claims – IRH owes approximately $8,700 to Texas State
Comptroller.  The Internal Revenue Service has filed various claims totaling $7189 for liability
related to unfiled tax returns.  As of the Petition Date, Debtors were current in their federal tax
filings and obligations and dispute each of these claims in their entirety.  No other tax claims are
known.

Priority Non-Tax Claims – none known.

General Unsecured Claims – IRH has scheduled approximately $2.23 Million in general unsecured claims.  Approximately $2.21 million of this amount is owed to affiliated entities which advanced funds to IRH in order to make debt service payments to Capmark and Vintage.  A portion of the affiliated debt can be offset against amounts owed back to IRH leaving a net balance of approximately $1.8 million.  This leaves approximately $200,000 in unsecured vendor debt.  It is possible that some of this debt is secured by mechanics and materialmen liens.  The Debtors have not examined these claims to determine their accuracy.  To obtain greater detail, please see the Claims Analysis attached as Exhibit B.

Administrative Claims Analysis

The Debtor's September 2010 Monthly Operating Report shows post-petition liabilities in the total amount of $79,175.29, consisting solely of post-petition trade payables, which is payable in the ordinary course of business.  No further administrative expenses are known other than accrued professional fees.

In summary, the Debtors have ample funds to satisfy ordinary course post-petition payables and attorneys fees.  Based on the foregoing, the Debtors believe that they will have sufficient funds to pay all administrative expense claims which will come due on the effective date.

2.  FINANCIAL DIFFICULTIES AND RESTRUCTURING

IRH's loan with Capmark matured in July 2010.  With the current economic slump and collapse of the real estate market, the Debtors were unable to secure alternative financing and Capmark was unwilling to refinance the Capmark Loan. In addition to attempting to obtain alternative financing, the Debtors also attempted to sell the property.  In this regard, the Debtors entered into a listing agreement with the Houston office of ARA, a brokerage firm specializing in multifamily housing.  The listing agreement commenced on May 7, 2010 and lasted for 90 days.  ARA obtained several offers to purchase the apartment project.  The highest offer was $35 million.  The Debtors declined this offer since it was not enough to pay Capmark in full much less any of the other creditors.

On August 13, 2010, Capmark filed suit against Vintage Park in Harris County District Court, 190th Judicial District, alleging breach of contract and requesting an appointment of a receiver.  The parties reached a temporary agreement abating the appointment of a receiver.  However, on August 13, 2010, Capmark also noticed that the Property was scheduled for foreclosure on September 7, 2010, thereby precipitating this bankruptcy filing.

3.  FINANCIAL SITUATION AS OF PETITION DATE

As mentioned above, IRH's secured indebtedness consists of claims totaling approximately $41.6 million.  The Senior Secured Lender has claimed a lien on virtually all of IRH's assets, whose value is significantly less than the total amount of secured claims.  The extent, validity and priority of the liens are not in dispute.  IRH also has reported general

unsecured trade debt on its schedules of approximately $107,000 plus an additional $2.1 million in unsecured obligations owed by IRH to related entities. These trade debt obligations are owed to approximately 65 trade creditors. IRH employs approximately 10 employees. As of the Petition Date, the Property maintained an occupancy rate between 92-95% for the 324 unit apartment complex.

## 4. OWNERSHIP AND MANAGEMENT

### a. General Overview

The Debtors are all related business entities owned jointly by David A. Brannen, Guy Savage and G. J. Willem Noltes. A chart detailing the structure of each of the Debtor entities is attached hereto as Exhibit E. At present, the Debtor IRH and VPI have the same board of directors and officers, to which, Guy Savage and G. J. Willem Noltes are the sole members of the board.

These individuals receive no compensation for their services. In addition to Mr. Savage and Mr. Noltes, Wayne Rafanelli is an independent director with respect to Debtor VP GP. Prior to bankruptcy, Mr. Rafanelli was paid an independent director fee in connection with the decision to file for Chapter 11 and reimbursed him for attorneys' fees in connection therewith. The Debtors do not anticipate needing to make any more payments to Mr. Rafanelli during the bankruptcy case or after plan confirmation.

The Property is managed by an entity known as Investment Realty, LLC. This company is owned by Mr. Savage. Prior to bankruptcy, Investment Realty, LLC received a market based management fee equal to 4% of gross monthly rents. Investment Realty, LLC has agreed to waive this fee during the pendency of the bankruptcy case. Upon the Effective Date, IRH will recommence paying management fees to Investment Realty, LLC based on a 4% of gross monthly rents.

### b. Capital Structure

IRH is a Georgia Limited Partnership and owns the Property. VPI, also a Georgia Limited Partnership, is the 99% limited partner of IRH. VP GP, a Delaware entity, is the general partner of IRH. VPI is owned 100% by Huntington Farms Investment, LLC, a Georgia corporation. VPI is the 100% owner of VP GP.

### c. Current Management Team

G. J. Willem Noltes is the Vice-President of all of the Debtors. Guy Savage is the Manager of all of the Debtors. Rebecca K. Rosato serves as the controller of the Debtors.

5. SIGNIFICANT ACTIONS IN BANKRUPTCY CASE

   a. Voluntary Petition filing

The Debtors each filed for Chapter 11 relief on September 2, 2010.  The Debtors continue to operate as debtors-in-possession subject to the supervision of the Bankruptcy Court and in accordance with the Bankruptcy Code and are authorized to operate their business and manage their properties in the ordinary course, with transactions outside of the ordinary course of business requiring Bankruptcy Court approval.  An immediate effect of the filing of the Debtors' bankruptcy petition is the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoins the commencement or continuation of all collection efforts by creditors, the enforcement of Liens against property of the Debtors, and the continuation of litigation against the Debtors. The relief provides the Debtors with the "breathing room" necessary to reorganize their business and prevents creditors from obtaining an unfair recovery advantage while the Chapter 11 Cases are ongoing.

   b. Administration – "First Day" Motions

Shortly after the first day of the Chapter 11 Cases, the Debtors filed several applications and motions seeking relief by virtue of so-called "first day motions." First day motions are intended to facilitate the transition between a debtor's pre-petition and post-petition business operations by approving certain regular business practices that may not be specifically authorized under the Bankruptcy Code or as to which the Bankruptcy Code requires prior approval by the bankruptcy court. The first day orders the Debtors obtained in these Chapter 11 Cases, which are typical of orders entered in business reorganization cases across the country, authorize, among other things:

*Motion for Joint Administration of Cases:* By this motion, Debtors requested that the Court jointly administer all of the Debtors Chapter 11 bankruptcy cases (Case No. 10-37503, 10-37508, 10-37511) under Case No.10-37503.   An order approving this motion was entered on September 8, 2010 (Docket #15).

*Emergency Motion for Order Authorizing Payment of Prepetition Wages, Taxes, and Benefits*: By this motion, the Debtors requested that they be permitted to pay wages and benefits earned by employees and contract labor pre-petition. If the Debtors were not permitted to pay employees and contract labor, they would be at risk of losing valuable members of their staff, hindering their ability to continue operations and adversely impacting the value of the Debtors' assets. This motion was granted on September 8, 2010 (Docket #19).

*Motion for Use of Cash Collateral*: The filing of a bankruptcy proceeding prohibits the debtor from using cash held in its own accounts to the extent that the cash constitutes collateral, unless the debtor obtains court permission or the lender consents.   Thus, soon after the bankruptcy, the Debtors sought to use cash proceeds of rents generated from its business to continue operations. The cash collateral was encumbered by liens of Capmark.

Without Cash Collateral, the Debtors could not have continued operations.  The Court

authorized cash collateral usage on an interim basis on September 8, 2010 (Docket #18) and again on September 28, 2010 (Docket #46). A final order was entered by the Court on October 13, 2010 (Docket #63), authorizing cash collateral usage through the earlier of (i) the effective date of a confirmed plan of reorganization, (ii) the appointment of a trustee; (iii) the conversion of this case to a Chapter 7; or (iv) dismissal of this case.

c. Employment of Professional Persons

The Debtors have been represented in this Chapter 11 Proceeding by Edward L. Rothberg and the law firm of Hoover Slovacek LLP and an order authorizing the employment of Mr. Rothberg and this firm was entered by the Court on September 8, 2010 (Docket #20).

d. Other Relevant Pleadings

(1) Emergency Motion for Order pursuant to 11 U.S.C. §366 (i) Authorizing Payment of Cash Deposit for Adequate Assurance and (ii) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Services: By this motion, the Debtors sought to establish adequate assurance payments to utility providers in order to prevent the providers from discontinuing, altering or refusing services to the Debtors. An order approving this motion was entered on September 29, 2010 (Docket #48).

(2) Emergency Motion for Entry of Order Approving Debtors' Payment/Return of Pre-Petition Security Deposits in the Ordinary Course of Business: By this motion, the Debtors sought authorization to return pre-petition security deposits to tenants in the ordinary course of business. An order approving this motion was entered on September 29, 2010 (Docket #47).

(3) Motion for Valuation of Collateral: By this motion, the Debtors sought to have the Court determine the value of the Property pursuant to Section 506(a) of the Bankruptcy Code (Docket #65). This motion was filed on October 19, 2010 and is currently pending before the Court.

C. **Case Management Going Forward**

1. PLAN NEGOTIATIONS

The Debtors have an exclusive period within which they may propose a plan of reorganization and are proposing the Plan within that period. Before submitting the current Plan, the Debtors negotiated the use of Cash Collateral with Capmark.

2. ASSUMPTION AND REJECTION

The bankruptcy law allows the Debtors to assume or reject any pending lease agreements or executory contracts that exist on the date of the order for relief. Additionally, the law

provides that the Debtors can assign their interest in lease agreements and executory contracts provided they cure all defaults and provide adequate assurance that the assignee will comply with the terms of the lease or contract. Executory contract and lease assumption and rejection are treated in the Plan. Any contract or lease not specifically assumed in the Plan, or by prior court order, is deemed rejected.

## V.   DESCRIPTION OF PLAN

### SUMMARY OF THE PLAN OF REORGANIZATION

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND IMPLEMENTATION OF THE PLAN AND THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, AND TO THE EXHIBITS ATTACHED THERETO. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS. THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTOR UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE REORGANIZED DEBTORS, AND OTHER PARTIES IN INTEREST. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.**

### A. Overall Structure of the Plan

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of its creditors and shareholders. Upon the filing of a petition for relief under Chapter 11, Section 362 of the Bankruptcy Code provides for an automatic stay of substantially all acts and proceedings against the debtor and its property, including all attempts to collect claims or enforce liens that arose prior to the commencement of the Chapter 11 Case.

The consummation of a plan of reorganization is the principal objective of a Chapter 11 case. A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by the Bankruptcy Court makes the plan binding upon the debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor of, or equity security holder in the debtor, whether or not such creditor or equity security holder (i) is impaired under or has accepted the plan or (ii) receives or

retains any property under the plan. Subject to certain limited exceptions, and other than as provided in the plan itself or the confirmation order, the confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan and substitutes for such debt the obligations specified under the confirmed plan, and terminates all rights and interests of equity security holders.

The Plan should be read carefully and independently of this Disclosure Statement. The following analysis of the Plan is intended to provide a context for understanding the remainder of this Disclosure Statement and to assist in an understanding of the Plan and the proposed treatment of the Creditors.

The Debtors expect to implement their plan and continue in their business restructuring which should provide growth and full compliance with the plan. The Debtors have a strong core business and intend to reorganize around that business which, together with certain other operational improvements, is expected to be the basis for a viable reorganization plan.

The terms of the Debtors' Plan are based upon, among other things, the Debtors' assessment of their ability to achieve the goals of their business plan, make the distributions contemplated under the Plan, and pay their continuing obligations in the ordinary course of business. Under the Plan, Claims against and Interests in the Debtors are divided into Classes according to their relative seniority and other criteria.

A copy of the Plan is attached as Exhibit A. Generally, If the Plan is confirmed by the Bankruptcy Court and consummated, (1) Allowed Administrative Claims and Priority Non-Tax Claims will be paid in cash in full; (2) Allowed Ad Valorem Claims of Taxing Authorities will be paid in cash full when due; (3) Allowed Non-Tax Priority Claims, if any, will be paid in cash in full within 30 days of the Effective Date; (4) Allowed Priority Tax Claims, if any, will be paid in full with twelve equal quarterly installments including interest at the statutory rate; (5) Allowed Secured Claim of Capmark Bank will be paid by the delivery of a promissory note from the Reorganized IRH for $34.7 million or such other amount as determined by the Court, plus interest at the rate prime rate of interest plus .75% (i.e. prime is currently 3.25% plus .75%) or such other amount as determined by the Bankruptcy Court, to be paid over a seven year period; (6) Allowed Unsecured Vendor Claims of $2500 or Less (and vendors electing to be treated in this class) and Allowed Senior Secured Claims of Mechanics and Materialmen shall be receive the full amount of their respective Allowed Claim without interest; (7) Allowed Unsecured Deficiency Claim of Capmark Bank and Allowed Unsecured Vendor Claims in Excess of $2500 shall each receive a single payment equal to 10% of their respective Allowed Claim amount plus an unsecured Promissory Note for the balance of their unsecured claims;  (8) Wrightwood Capital Lender, LP shall have the option of (i) receiving payment in full of the Wrightwood Note with an extended maturity date until 2017 and no payment to be made until Capmark Bank's Allowed Claims have been paid in full or (ii) collectively 49% of the New Partnership Interest in the Reorganized IRH and VP GP  in full satisfaction of  its Claim, with a monthly Preferred return of $20,000, if funds are available, and redeemable at the Reorganized IRH's option for $2.6 million; (9) Allowed Unsecured Claims of affiliates will be offset against debts owed to the Debtors and the balance, if any will be subordinated to the payment of all other classes; and (10) Interests of the existing Equity Holders will be extinguished and New Partnership Interests in the Reorganized IRH and VP GP shall be issued to the Equity Holders in exchange for a $1 million

Equity Infusion. The Equity Holders shall receive all New Partnership Interests, except for any interest obtained by Wrightwood, and retain the option to purchase any Equity Interests obtained by Wrightwood for $2.6 million.   The Effective Date of the Plan is the date on which the Confirmation Order becomes a Final Order.

On the Effective Date (and at certain times thereafter), the Reorganized Debtor will distribute Cash, New Partnership Interests, and other property in respect of Classes of Claims as provided in the Plan. All Classes of Claims and Interests are "impaired" for voting purposes.

### B. Administrative Expenses and Priority Tax Claims and Timing of Payment

The Holders of Administrative Expense Claims against the estate and Tax Claims are treated as generally described below

Payment of Administrative Claims.  Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

Payment of Non-Tax Priority Claims.  Each Holder of an unpaid Allowed Non-Tax Priority Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment.

Payment of Unsecured Priority Tax Claims.  The Allowed Priority Tax Claims shall be paid in quarterly installments beginning on the first day of the first full calendar quarter following the Effective Date, and continuing on the same date of each succeeding calendar quarter for a period of twelve quarters, until such Claims are paid in full.  Such deferred cash payments shall have a value as of the Effective Date the Plan, equal to the allowed amount of such Claims. In computing the present value of such Claims, the interest rate applied shall be the interest rate, which is currently 4.25%, as determined by Texas Tax Code Section 110.060(b) from the Effective Date until paid.

Payment to Professionals.  All payments to professionals for actual, necessary services and costs advanced in behalf of the bankruptcy up until the Confirmation Date shall be pursuant to Bankruptcy Court order and subject to the restrictions of 11 U.S.C. §330. Professional fees incurred for services rendered and costs advanced subsequent to the Effective Date shall be the liability of the Reorganized IRH.

### C. Classes of Secured and Unsecured Claims and Treatment of Interests

The Classes of Claims against and Interests in the Debtors created under the Plan, the treatment of those Classes under the Plan, and the other property to be distributed under the Plan, are generally described below

**Class 1. Allowed Secured Claim of Taxing Authorities.**

Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for the year 2010 and any prior years secured by a lien on all of the Debtors' assets. Class 1 Claims are not impaired.

Treatment: Allowed Secured Class 1 Claims shall be paid in cash in full when due without interest or penalty. The Allowed Secured Class 1 Claims Holders shall retain their liens until such time as they are paid in full.

**Class 2. Allowed Secured Claim of Capmark Bank of $34.7 million.**

Class 2 consists of the Allowed Secured Claims of Capmark secured by liens on substantially all of the Debtors' assets. The Class 2 Claim is impaired.

Treatment. The Holder of the Allowed Secured Class 2 Claim shall receive a promissory note from the Reorganized IRH in the principal amount of $34.7 million or such other amount as determined by the Court, payable at a rate of interest equal to the prime rate (currently 3.25%), plus .75%, or such other amount as determined by the Bankruptcy Court. Beginning on the first day of the first calendar month after the Effective Date, and continuing on the first day of each succeeding month, the Reorganized IRH shall make monthly principal and interest payments for 84 months based on a 30 year amortization schedule, with no prepayment penalty. The entire remaining principal balance due shall be paid at the end of the 84th month. The Holder of the Allowed Secured Class 2 Claim shall retain its liens as provided under its pre-Filing Date loan documents until such time as the claim is paid in accordance with the terms of this Plan. The deficiency balance of Capmark's claim shall be treated as a Class 4 Claim under Section 4.4 of the Plan.

**Class 3. Allowed Vendor Unsecured Claims of $2500 or Less**

Class 3 consists of the Allowed Vendor Unsecured Claims of $2500 or less. The Class 3 Claims are impaired.

Treatment: The Holder of the Allowed Vendor Unsecured Class 3 Claims shall be paid in full without interest on the later of thirty (30) days after the Effective Date or the date such Claims become Allowed Claims. The Class 3 Claims are impaired.

**Class 4. Allowed Unsecured Deficiency Claim of Capmark and Allowed
Unsecured Vendor Claims in Excess of $2500**

Class 4 consists of the Allowed Unsecured Deficiency Claim held by Capmark and Allowed Unsecured Vendor Claims in excess of $2500. The Class 4 Claims are impaired.

Treatment. Within thirty (30) days of the Effective Date, the Holders of Class 4 Claims shall receive in full and final satisfaction of their Allowed Claims a single cash payment equal to ten percent (10%) of their Allowed Claims, plus new Unsecured Promissory Notes for the full remaining balance of their Allowed Class 4 Claims with the following terms:

| | | |
|---|---|---|
| o | Maturity: | The earlier of sale or refinance of the Property or 7 years from the Effective Date. |
| o | Interest Rate: | Prime rate, plus 2% |
| o | Amortization: | None |
| o | Payments: | None until maturity |

### Class 5. Allowed Wrightwood Claim of $2.6 million against Vintage Park Investment, LLC.

Class 5 consists of the Allowed Claim of Wrightwood of $2.6 Million against VPI. The Class 5 Claim is impaired under both Option 1 and Option 2.

Treatment. The Holder of the Allowed Class 5 Claim shall elect either Option 1 or Option 2 described below.

Option 1:  The term of the Wrightwood Note shall be extended until December 31, 2017 and Wrightwood shall receive no payment with respect to the Wrightwood Note until Capmark Bank's Class 2 and Class 4 Claims are paid in full in accordance with the terms of this Plan. Otherwise, the Allowed Class 5 Claim shall be paid by the Reorganized VPI in full pursuant to the express terms of the original loan documents.

Option 2:  In full and final satisfaction of its allowed claim, the Holder of the Allowed Class 5 Claim shall receive shares of New Partnership Interests totaling 49% of the outstanding shares with (i) a Preferred return of $20,000/month, payable only from excess funds as solely determined by the Reorganized Debtors and (ii) in the event the Property is sold or refinanced, shall be fully redeemable by the Reorganized IRH in the amount of $2.6 million. The New Partnership Interests so issued shall be free and clear of all liens, claims, interests, and encumbrances of any kind.

### Class 6. Allowed Senior Secured Claims of Mechanics and Materialmen.

Class 6 consists of the Allowed Senior Secured Claims of mechanics and materialmen whose liens are determined to be senior to the Class 2 Claim.

Treatment.   The Holders of Class 6 Allowed Senior Secured Claims of mechanics and materialmen shall be paid in full without interest on the later of thirty (30) days after the Effective Date or the date such Claims become Allowed Claims.  To the extent the Holder of a Class 6 Claim does not have a lien that is senior to the Class 2 Claim, it shall be treated as a Class 4 Allowed Unsecured Vendor Claim. The Class 6 Claims are impaired.

**Class 7.  Allowed Claims of Affiliates.**

Class 7 consists of the Allowed Claims of Affiliates.  The Class 7 Claims are impaired.

Treatment  The Holders of Class 6 Claims shall be permitted to offset any amount due the Debtors.  Otherwise, the remaining balance, if any, shall be subordinated to the payment in full of all Claims in Classes 1 through 6.

**Class 8.  Allowed Interests of Equity Holders.**

Class 8 consists of the Allowed Equity Interests in IRH and VP GP.  The Class 8 Interests are impaired.

Treatment.  Existing Equity Interests in IRH and VP GP shall be cancelled, and New Partnership Interests in the Reorganized IRH and VG GP shall be issued as provided for in Section 6.6 of the Plan. In exchange for the Equity Infusion of $1 million, to be paid within 30 days of the Effective Date, the Allowed Class 7 Equity Interest Holders will each receive a pro rata share of either (i) 100% of the New Partnership Interests if Wrightwood elects Option 1, described in Section 4.5.2 of the Plan, or (ii) 51% of the New Partnership Interests if Wrightwood elects Options 2, described in Section 4.5.2 of the Plan. Reorganized IRH shall hold an option to purchase all of the New Partnership Interests granted to Wrightwood in Section 4.5.2 for a purchase price of $2.6 million. The New Partnership Interests so issued shall be free and clear of all liens, claims, interests, and encumbrances of any kind.

**D.  Means of Execution of Plan:**

1.  Vesting of Property of the Estate in Reorganized Debtor. On the Effective Date of the Plan, all property of the Debtors and of their Estates shall vest in each of the Reorganized Debtors free and clear of liens, claims and encumbrances, except as otherwise provided by the terms of this Plan.  There shall be no substantive consolidation.

2.  Continuation of Business Operations.  From and after the Effective Date of the Plan, the Reorganized Debtors shall be authorized to continue their normal business operations and enter into such transactions as they deems advisable, free of any restriction or limitation

imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan. The funds from the Equity Infusion, along with cash flow of the operations, shall be used to fund payments required by the Plan.

      3. <u>Equity Infusion</u>: The principals of VPI shall collectively contribute $1 million to Reorganized IRH in exchanges for shares of New Partnership Interests as provided for in Section 4.7.1 of the Plan.

      4. <u>Directors and Officers of Reorganized Debtors</u>. The Directors and Officers of the Debtors are authorized to continue as Directors and Officers of the Reorganized Debtors from and after the Effective Date of the Plan.

      5. <u>Source of funds for Payments due on the Effective Date</u>. The current operational revenues, collection of receivables and the Equity Infusion will be used to pay Administrative and Non-Tax Priority Claims, as well as any additional claims required by the Plan that are due on the Effective Date.

      6. <u>New Partnership Interests</u>.   The Reorganized IRH will issue New Partnership Interests as follows:

        o     If Wrightwood elects Option 1 described in Section 4.5.2 of the Plan, Allowed Class 7 Equity Interest Holders will each receive a pro rata share of 100% of the New Partnership Interests, or

        o     If Wrightwood elects Option 2 described in Section 4.5.2 of the Plan, Allowed Class 7 Equity Interest Holders will each receive a pro rata share of 51% of the New Partnership Interests, and Wrightwood shall receive the remaining 49% of the New Partnership Interests.

        o     If Wrightwood elects Option 2 described in Section 4.5.2 of the Plan, the Reorganized IRH and VP GP shall hold options to purchase all of the New Partnership Interests granted to Wrightwood for a purchase price of $2.6 million.

**E.   Bar Dates**.

      **Administrative Claims Bar Date.**   Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan, including Lease Claims) against the Debtors, except for administrative expenses incurred in the ordinary course of operating the Debtors' business, must file an application for payment of such Administrative Claim on or within sixty (60) days after entry of the Confirmation Order with actual service upon counsel for the Debtors, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices. The Debtors shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date.   U.S. Trustee fees which accrue after confirmation shall be paid by the Reorganized Debtor until the case is closed or converted. The Debtors shall file with the Court and serve on the United States Trustee a monthly financial report for each quarter (or portion

thereof) that the case remains open in a format prescribed by the United States Trustee. It is not necessary for the U.S. Trustee to file a proof of claim.

**Unsecured Claims Bar Date**. The deadline for filing a proof of claim for an unsecured claim (other than a claim for damages stemming from the rejection of an executory contract or lease) is January 19, 2011.

**Rejection Damage Claim Bar Date**. An Unsecured Claim arising from the rejection of an executory contract or unexpired lease must be filed no later than 20 days after the Effective Date of the Plan.

### F. Summary of Financial Projections

Attached hereto as Exhibit C are financial projections prepared by management. These projections include actual results for the year 2009 up to September 2010, monthly forecast results for the balance of 2010 and 2011, and annual forecast for the term of the plan. The statements include projected income statements, balance sheets, cash flow forecasts, assumptions and significant historical data. The projections are conservative and establish that the Reorganized Debtor will be able to make the payments provided for in the Plan.

## VI.   LIQUIDATION ANALYSIS

### A. Methodology.

The starting point in determining the amount which members of each impaired class of unsecured claims and interests would receive in a Chapter 7 case is to estimate the dollar amount that would be generated from the liquidation of the Debtor (the "Liquidation Proceeds"). The Liquidation Proceeds of the Debtors would consist of the proceeds from the sale of all of the assets of the Debtors, augmented by the cash held by the Debtors. The present value of the distribution from the Liquidation Proceeds is then compared with the present value offered to each of the classes of unsecured claims and interests of each such class.

### B. Analysis.

A Liquidation Analysis reflecting the liquidation value of the Debtors' assets and the corresponding return to unsecured creditors in the event of a liquidation is attached hereto as Exhibit "D". The return to unsecured creditors is $0 because the assets have a market value of less than the $34.7 million and are secured by liens of approximately $41 million owed to Capmark. Thus, if these cases were converted to Chapter 7 proceedings, there would be no assets available for distribution to any creditor except Capmark. General Unsecured Creditors would receive nothing under a liquidation.

However, under the proposed Plan, General Unsecured Creditors are scheduled to have their Allowed Claims paid in full. Creditors holding claims of $2500 or less, or those electing to be treated in this class, will be paid in full within thirty (30) days of the Effective Date. All other General Unsecured Creditors will each receive a single payment equal to 10% of the Allowed Claim amount within thirty (30) days of the Effective Date, plus a promissory note equal to the

remaining balance of the Allowed Claim amount, to be paid upon sale or refinance of the Debtor or no later than seven years from the Effective Date.    Thus, the total value of the proposed distribution to General Unsecured Creditors far exceeds the amount that can reasonably be expected in a liquidation.

## VII.    RISKS POSED TO CREDITORS

The principal risk to the creditors is that the Plan will not be confirmed.    Absent confirmation of the Plan, Capmark will likely obtain stay relief and unsecured creditors would not receive any distribution on account of their Claims.

## VIII.   ALTERNATIVES

Although the Disclosure Statement is intended to provide information to assist creditors in making a judgment on whether to vote for or against the Plan, and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful.    These alternatives include conversion to a Chapter 7 or dismissal of the proceedings.    The Debtors of course, believe the proposed Plan to be in the best interests of creditors.    The Debtors assess the alternatives as follows:

### A.   Conversion to Chapter 7

The first alternative would be to convert the Chapter 11 case to a Chapter 7 liquidating bankruptcy.    If this occurred, the Bankruptcy Court will appoint a trustee to liquidate the Debtors' assets for the benefit of its creditors.    The costs associated with a trustee would then be added to the additional tier of administrative expenses entitled to priority over general unsecured claims upon conversion.    Such administrative expenses include the Chapter 7 Trustee's commissions, as well as fees for professionals retained by the Chapter 7 Trustee to assist in the liquidation.    The Trustee's commissions are based on disbursements to creditors.    The Trustee receives 25% of the first $5,000, 10% of the next $45,000, 5% of the next $950,000 and 3% on all amount disbursed in excess of $1 million.

In a Chapter 7 case, the Debtors would likely cease operating, the secured lenders would lift the stay and foreclose on the Debtors' assets, and unsecured creditors would receive no distribution on account of their claims.

### B.   Dismissal

Dismissal of the proceeding would likely result in the Debtors defending debt-collection litigation and numerous new lawsuits to collect debts.    The Secured lenders would foreclose on substantially all of the Debtors' assets, halting the Debtors' operations.    Even if there were unencumbered assets, the creditors who receive quick judgments will be able to execute and recover their claims leaving nothing for the remaining creditors.

## C. No Assurance of Either

There are other possibilities which are less likely, such as a competing plan proposed by a different party. The Debtors have attempted to set forth the reasonable alternatives to the proposed Plan. However, the Debtors must caution creditors that a vote must be for or against the Plan. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what course the proceedings will take if the Plan fails acceptance.

## IX.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES

### A. Tax Consequences to Creditors

#### 1. GENERALLY

The tax consequence to any particular creditor may vary depending on their own circumstances and they should consult with their own tax professional for advice regarding the impact on them of their acceptance or rejection of the plan.

#### 2. UNSECURED CLAIMS

Holders of Class 4 Unsecured Claims will receive distributions from the Debtors. A Class 4 Claimholder should either be treated as (i) recognizing ordinary income in an amount equal to cash received and recognizing a loss in an amount equal to the tax basis in the Claim or (ii) recognizing a loss equal to the difference between the amount of cash received and their tax basis in their Claim.

A Claimholder's tax basis in a Claim should generally equal the amount included in income as a result of the provision of goods or services to the Debtors, except to the extent that a bad debt loss had previously been claimed. The gain or loss with respect to the Claim should be ordinary to the extent that it arose in the ordinary course of trade or business for services rendered or from the sale of inventory to the Debtors.

**DUE TO THE COMPLEX NATURE OF APPLICABLE TAX LAWS, CLAIMANTS SHOULD CONSULT WITH THEIR TAX PROFESSIONAL CONCERNING COMPLIANCE WITH AND THE AFFECT OF BOTH STATE AND FEDERAL TAX LAWS ON THEIR INTEREST BEFORE THEY CAST A BALLOT TO ACCEPT OR REJECT THE PLAN.**

**THE ACCOUNTANTS, ATTORNEYS, AND THE MANAGEMENT OF THE DEBTOR MAKE NO REPRESENTATIONS HEREIN CONCERNING THE IMPACT OF THE TAX LAW ON ANY INDIVIDUAL TREATED UNDER THE PLAN.**

## X.  PREFERENCES AND FRAUDULENT TRANSFERS

Under the Bankruptcy Code and Texas State Law, the bankruptcy estate may sue to recover assets (or their value) that were transferred by "voidable transfers", which includes assets transferred:

        (A)     in fraud of Creditors,

        (B)     in constructive fraud of Creditors – because the asset was transferred without sufficient consideration while the Debtors was insolvent,

        (C)     as a preferential transfer - a payment before bankruptcy outside the ordinary course that allows a creditor to receive more than it would receive in liquidation, or

        (D)     as an unauthorized post-bankruptcy transfer by the Debtors outside of the ordinary course.

The Debtors do not believe there are any transfers voidable under Section 550, 547, 548, 544, or similar provision of the Bankruptcy Code. Prior to bankruptcy, all payments were made in the ordinary course of business and reasonably equivalent value was obtained for all assets transferred. All post-bankruptcy payments were likewise in the ordinary course, or otherwise authorized by the Court. Accordingly, the Debtors do not believe that any transfers are avoidable under Section 549 of the Bankruptcy Code. On the basis of this analysis, the Plan releases all such causes of action against all parties.

If the Plan is not confirmed and a liquidating trustee or Chapter 7 trustee is appointed, it is possible that the trustee's analysis will differ from that of the Debtors and that avoidance actions will be commenced against Creditors of the estate, insiders, or others.

## XI.  LITIGATION

On August 13, 2010, Capmark filed suit against Vintage Park in Harris County District Court, 190th Judicial District, alleging breach of contract and requesting an appointment of a receiver. The parties reached a temporary agreement abating the appointment of a receiver Otherwise, no litigation is pending or threatened against the Debtors. No claim of environmental liability has been made, and no such claims are known or expected.

## XII.  MANAGEMENT OF THE REORGANIZED DEBTOR

### A. Directors of the Debtors

The Directors and Officers of the Debtors are Guy Savage and G.J. Willem Noltes. These Directors and Officers of the Debtors shall continue as Directors and Officers of the Reorganized Debtors from and after the Effective Date of the Plan.

708297-2                                                    - 24 -

B. **Management Compensation**

The officers and directors of the Debtors receive no direct compensation. However, as stated above, the management company, Investment Realty, LLC will begin receiving management fees upon the Effective Date equal to 4% of gross monthly rents. Investment Realty, LLC is owned by Mr. Savage.

## XIII.   ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A. Acceptance of the Plan

Confirmation of a Plan under Chapter 11 requires, among other things, that at least one class of creditors or claimants, such as the secured or unsecured creditors in this case, vote in favor of the Plan. This vote is calculated by only counting those creditors who actually send in a ballot on time. If two thirds in total dollar amount and a majority in number of claims actually voting in a class approve the Plan, that class of creditors is considered an accepting class. If the vote is insufficient, the Court can still confirm the Plan, but only upon being provided additional proof regarding the ultimate fairness of the Plan to the creditors. The Debtors believe that the unsecured creditors will support the Plan when they consider the fact that the secured and priority creditors will receive the majority of all of the assets of the Debtors in the event the reorganization is unsuccessful.

The proponent of a Plan also must meet all other applicable requirements of Section 1129(a) of the Bankruptcy code (except Section 1129(a)(8), if the proponent proposes to seek confirmation of a Plan under Section 1129(b) of the Bankruptcy Code). These other requirements include, among other things, that the Plan comply with the applicable provisions of Title 11 and other applicable law, that the Plan be proposed in good faith, and that at least one impaired class of creditors vote to accept the Plan. The Debtors believe that the Plan satisfies all other applicable requirements of Section 1129(a) of the Bankruptcy Code.

### B. Confirmation without Acceptance of All Impaired Classes

The Bankruptcy Court may confirm a plan even if not all impaired classes accept the Plan. For the Plan to be confirmed over the rejection of an impaired class, the proponent must show, among other things, that the plan does not discriminate unfairly and that the plan is fair and equitable with respect to each impaired class that has not accepted the plan.

Under Section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class if, among other things, the plan provides: (a) with respect to secured claims, that each holder of a claim included in the rejecting class will receive or retain, on account of its claim, property that has a value as of the Effective Date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and interests, that the holder of any claim or interest that is junior to the claims or interest of such class will not receive or retain, on account of such junior claim or interest, any property unless the senior class is paid in full. The Bankruptcy Court must further find that the economic terms of a plan do not unfairly discriminate as provided in Section 1129(b) of the Bankruptcy Code with respect to the particular objecting class.

THE DEBTORS BELIEVE THAT THE PLAN HAS BEEN STRUCTURED SO THAT IT WILL SATISFY THE REQUIREMENTS OF SECTION 1129(b) OF THE BANKRUPTCY CODE AND CAN BE CONFIRMED OVER THE REJECTION OF THE PLAN BY SECURED CREDITORS, IF A CRAMDOWN IS REQUESTED.   THE DEBTORS BELIEVE THAT THE UNSECURED CREDITORS WILL SUPPORT THE PLAN SINCE THE ALTERNATIVE, LIQUIDATION, WILL LIKELY PAY SECURED CREDITORS THE MAJORITY OF THE ESTATES' ASSETS, LEAVING LITTLE OR NO RETURN TO UNSECURED CREDITORS.

### C.  Other Requirements for Confirmation

In order to obtain confirmation of the Plan, the requirements of Section 1129 of the Code must be satisfied.  These requirements include but are not limited to findings that the Plan complies with the applicable provisions of Chapter 11 of the Code, that the Debtors have complied with the applicable provisions of Chapter 11 of the Code, that the Plan has been proposed in good faith and not by any means forbidden by law, and at least one class of impaired claims has voted to accept the Plan.  The Debtors believe that the Plan satisfies all the statutory requirement of Chapter 11 of the Bankruptcy Code.

#### 1. BEST INTEREST OF CREDITORS

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each class, that each holder of a claim or interest of such class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date, that is not less than the amount that such person would receive or retain if the Debtors were, on the effective date, liquidated under Chapter 7 of the Bankruptcy Code.  As set forth above, the Debtors believe that this test will be satisfied.

#### 2. FINANCIAL FEASIBILITY

The Bankruptcy Code requires that, in order for the Plan to be confirmed by the bankruptcy court, the bankruptcy court must determine that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors.  The Debtors believe that they will be able to fulfill their obligations under the Plan.

Attached hereto as Exhibit C is the Debtors' projection demonstrating the feasibility of the Plan. Exhibit C was prepared by Debtors' management from historical data and a projection model that assumes that revenue will be produced as projected by use of the current facilities and equipment.  The Debtors believe that they are sufficient to support additional business and will continue to increase its revenues.  This pro forma indicates that the Debtors will be able to survive on a post-confirmation basis.

To the extent revenue of the Debtors is insufficient to fund the payments on the Effective Date, the Tax Refund and Exit Facility will be used to fund the Plan.

708297-2

### D. Cram-Down - Confirmation Without Acceptance by All Impaired Classes

The Bankruptcy Code contains provisions for confirmation of a Plan even if the Plan is not accepted by all impaired classes, provided that at least one impaired class of claims has accepted it (determined without including any acceptance by any insider holding a claim of such class). These "cram-down" provisions, for confirmation of a Plan despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in Section 1129(b) of the Bankruptcy Code.

In the event that any impaired class of claims does not accept the Plan by the requisite majority set out in the introduction, the Debtor must demonstrate to the Bankruptcy Court, with respect to each impaired class which does not accept the Plan that the Plan does not discriminate unfairly, and is "fair and equitable" with respect to that class. Under the Bankruptcy Code, a Plan is considered "fair and equitable" with respect to secured claims, unsecured claims or interest, as the case may be, if the following conditions are met:

(a) <u>Secured Claims</u>. The holders of such claims retain their liens, to the extent of the allowed amount of their secured claims, and that each holder of such a claim receive on account of such secured claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estate's interest in the collateral.

(b) <u>Unsecured Claims</u>. Either (i) each impaired unsecured creditor receives or retains under the Plan property of a value as of the effective date of the Plan equal to the amount of its allowed claim, or (ii) the holder of any claim or interest that is junior to the claims of the dissenting class will not receive or retain any property under the Plan.

The Debtors believes that the Plan meets the "fair and equitable" test and does not discriminate unfairly with respect to any class of creditors or interest holders. Therefore, the Plan may be confirmed, even if it is rejected by the holders of allowed claims and interests.

### XIV.  CONCLUSION

The information provided in this Disclosure Statement is intended to assist you in voting on the Plan in an informed fashion. If the Plan is confirmed, you will be bound by its terms. Accordingly, you are urged to make such further inquiries as you may deem appropriate and then cast an informed vote on the Plan.

Respectfully submitted this 2nd day of December, 2010.

**IRH VINTAGE PARK PARTNERS, LP**

By:   /s/ G. J. Willem Noltes (by permission TJJ)
        G.J. Willem Noltes

**VPI GENERAL PARTNER, LLC**

By:   /s/ G. J. Willem Noltes (by permission TJJ)
        G.J. Willem Noltes

**VINTAGE PARK INVESTMENTS, LLC**

By:   /s/ G.J. Willem Noltes (by permission TJJ)
        G.J. Willem Noltes

OF COUNSEL

**HOOVER SLOVACEK LLP**

EDWARD L. ROTHBERG
State Bar No. 17313990
MELISSA A. HASELDEN
State Bar No. 00794778
T. JOSH JUDD
State Bar No. 00794778
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile:  713.977.5395
Email:    rothberg@hooverslovacek.com
        haselden@hooverslovacek.com
        judd@hooverslovacek.com
**ATTORNEYS FOR DEBTORS**

# EXHIBIT A

# PLAN OF REORGANIZATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| IRH VINTAGE PARK PARTNERS, LP, | § | CASE NO. 10-37503-H4-11 |
| | § | |
| | § | |
| VPI GENERAL PARTNER, LLC, | § | |
| | § | |
| VINTAGE PARK INVESTMENTS, LLC, | § | Jointly Administered |
| | § | |
| | § | Chapter 11 |
| DEBTORS | § | |

## JOINT CHAPTER 11 PLAN OF REORGANIZATION

HOOVER SLOVACEK LLP
EDWARD L. ROTHBERG
State Bar No. 17313990
MELISSA A. HASELDEN
State Bar No. 00794778
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile: 713.977.5395
Email: rothberg@hooverslovacek.com
       haselden@hooverslovacek.com

ATTORNEYS FOR DEBTORS

708712-1


EXHIBIT
A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| IRH VINTAGE PARK PARTNERS, LP, | § | CASE NO.  10-37503-H4-11 |
| | § | |
| VPI GENERAL PARTNER, LLC, | § | |
| | § | |
| VINTAGE PARK INVESTMENTS, LLC, | § | Jointly Administered |
| | § | |
| | § | Chapter 11 |
| DEBTORS | § | |

## JOINT CHAPTER 11 PLAN OF REORGANIZATION

IRH Vintage Park Partners, LP, VPI General Partner, LLC, and Vintage Park Investments, LLC (collectively "Debtors" or "Vintage Park"), submit this Joint Chapter 11 Plan of Reorganization (the "Plan") in these jointly administered proceedings for the treatment of all outstanding creditor claims and equity interests pursuant to Chapter 11 of the Bankruptcy Code.  The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.  All holders of claims against and equity interests in the Debtors are encouraged to read the Plan and accompanying Disclosure Statement in their entirety before voting on the Plan.

## ARTICLE 1
### INTRODUCTION AND GENERAL PURPOSES OF THE PLAN

IRH Vintage Park Partners, LP ("IRH"), is a limited partnership that owns and operates a large 324 unit upscale gated apartment community located at 15727 Cutten Road, in northwest Houston ("Property").  IRH is owned by VPI General

1

Partner, LLC ("VP GP"), its 1% general partner and Vintage Park Investments, LLC ("VPI"), its 99% limited partner.  VPI is also the 100% equity holder of VP GP. IRH, VP GP and VPI are collectively referred to hereafter as "Vintage Park" or "Debtors".  The only business of these Debtors is the ownership and operation of the Property.

The Plan provides for the treatment of the Debtors' existing debts and payment to Creditors by the Reorganized Debtors as follows:  (1) Allowed Administrative Claims and Priority Non-Tax Claims will be paid in cash in full; (2) Allowed Ad Valorem Claims of Taxing Authorities will be paid in cash in full when due; (3) Allowed Non-Tax Priority Claims, if any, will be paid in cash in full within 30 days of the Effective Date; (4) Allowed Priority Tax Claims, if any, will be paid in full with twelve equal quarterly installments including interest at the statutory rate; (5) Allowed Secured Claim of Capmark Bank will be paid by the delivery of a promissory note from the Reorganized IRH for $34.7 million or such other amount as determined by the Court, plus interest at the prime rate of interest plus .75% to be paid over a seven year period; (6) Allowed Unsecured Vendor Claims of $2500 or less (and vendors electing to be treated in this class) and Allowed Senior Secured Claims of Mechanics and Materialmen shall receive the full amount of their respective Allowed Claim without interest; (7) Allowed Unsecured Deficiency Claims of Capmark Bank and Allowed Unsecured Vendor Claims in Excess of $2500 shall each receive a single payment equal to 10% of their respective Allowed Claim amount plus an unsecured Promissory Note for the balance of their unsecured claims;  (8) Wrightwood Capital Lender, LP shall have the option of (i) receiving payment in full of the Wrightwood Note with an extended maturity date until

2017 and no payment to be made until Capmark Bank's Allowed Claims have been paid

in full or (ii) collectively 49% of the New Partnership Interest in the Reorganized IRH

and VP GP in full satisfaction of its Claim, with a monthly Preferred return of $20,000,

if funds are available, and redeemable at the Reorganized IRH's option for $2.6 million;

(9) Allowed Unsecured Claims of affiliates will be offset against debts owed to the

Debtors and the balance, if any will be subordinated to the payment of all other classes;

and (10) Interests of the existing Equity Holders will be extinguished and New

Partnership Interests in the Reorganized IRH and VP GP shall be issued to the Equity

Holders in exchange for a $1 million Equity Infusion. The Equity Holders shall receive

all New Partnership Interests, except for any interest obtained by Wrightwood, and retain

the option to purchase any Equity Interests obtained by Wrightwood for $2.6 million.

The means for the implementation of the Plan are set forth below.

## ARTICLE 2
## DEFINITIONS

2.1      For purposes of the Plan the following terms shall have the respective
meanings specified as follows:

2.1.1   Administrative Claim shall mean any Claim that is defined in Section
503(b) of the Bankruptcy Code as being an "administrative expense"
within the meaning of such section and referenced in Bankruptcy Code
Section 507(a)(1) including, without limitation, the actual, necessary costs
and expenses of preserving the Debtors' estates and operating the business
of the Debtors, including wages, salaries, or commissions for services
rendered after the commencement of the case, compensation for legal and
other services and reimbursement of expenses Allowed or awarded under
Bankruptcy Code Sections 330(a) or 331, and all fees and charges
assessed against the estates of the Debtors under title 28 of the United
States Code.

2.1.2   Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in
respect of which a proof of claim or application has been filed with the
Bankruptcy Court within the applicable period of limitation fixed by

Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

2.1.3   Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for voidable transfers or similar legal theories.

2.1.4   Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date.

2.1.5   Bankruptcy Court shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in which the Debtors' Chapter 11 cases are pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.1.6   Bankruptcy Estate shall mean all of the assets owned by the Debtors and their estates.

2.1.7   Bankruptcy Rules shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

2.1.8   Bar Date shall mean January 19, 2011, the date established by the Bankruptcy Court as the date by which proofs of claim had to be filed.

2.1.9   Capmark shall mean Capmark Bank.

2.1.10  Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

2.1.11  Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured whether or not asserted.

2.1.12  Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

2.1.13  Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims and Class 7 Claims shall mean the Claims so classified in Article 4.

2.1.14  Class 8 Interests shall mean the Allowed Interests so classified in Article 4.

2.1.15  Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

2.1.16  Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.1.17  Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.18  Creditor shall mean any entity holding a Claim.

2.1.19  Debtors shall mean collectively IRH Vintage Park Partners, LP, VPI General Partner, LLC, and Vintage Park Investments, LLC.

2.1.20  Disbursing Agent shall mean the Reorganized VP GP.

2.1.21  Disclosure Statement shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

2.1.22  Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

2.1.23  Disputed Claim shall mean that portion (including, where appropriate, the whole) of any Claim that (a) is listed in the Debtors' schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtors' schedules of liabilities and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount; (c) is not listed in a Debtor's schedules of liabilities, but as to which a proof of claim has been filed with the Bankruptcy Court; or (d) as to which an objection to a proof of claim has been filed and has not become an Allowed Claim.

708712-1

5

2.1.24  Effective Date shall mean the date upon which the Confirmation Order becomes a Final Order.

2.1.25  Equity Infusion shall mean the $1 million contributed by the Class 7 Interest Holders to Reorganized IRH subsequent to the Effective Date.

2.1.26  Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

2.1.27  Executory Contract(s) shall mean any Pre-petition Unexpired lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

2.1.28  Filing Date shall mean September 2, 2010, the date the Debtors filed their respective voluntary petitions under Chapter 11 of the Bankruptcy Code.

2.1.29  Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

2.1.30  General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors have an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim, but would include any deficiency amount under Section 506 of the Bankruptcy Code; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

2.1.31  Holder shall mean the owner or Holder of any Claim or Interest.

2.1.32  Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

2.1.33  Insider has the definition ascribed to it under the Bankruptcy Code.

2.1.34  IRH shall mean the Debtor, IRH Vintage Park Partners, LP, in Bankruptcy Case No 10-37503-H4-11.

2.1.35  Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

2.1.36  New Partnership Interests shall mean that newly issued partnership interest, issued after the Effective Date, in the Reorganized IRH and VP GP.

2.1.37   <u>Non-Tax Priority Claims</u> shall mean any Claim that is defined in Section 507(a)(2)-(7) of the Bankruptcy Code.

2.1.38   <u>Officers</u> shall mean G.J. Willem Noltes and Guy Savage, officers of the Reorganized Debtors.

2.1.39   <u>Person</u> shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.1.40   <u>Plan</u> shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

2.1.41   <u>Priority Tax Claims</u> shall mean any Claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

2.1.42   <u>Property</u> shall mean that certain approximately 13 acre tract of land and apartment community located at 15727 Cutten Road, Houston, TX.

2.1.43   <u>Professionals</u> shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

2.1.44   <u>Pro-Rata</u> shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

2.1.45   <u>Reorganized Debtor</u> shall mean IRH Vintage Park Partners, LP, VPI General Partner, LLC, and Vintage Park Investments, LLC respectively immediately after the Effective Date .

2.1.46   <u>Secured Claim</u> shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which the Debtors have an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.1.47   <u>Substantial Consummation</u> shall occur on the Effective Date.

2.1.48   <u>Vendor Unsecured Claims of $2500 or Less</u> shall mean an Allowed Claim, (a) the amount of which (prior to any subdivision or assignment thereof after the Petition Date) is not more than $2,500.00, or (b) the Holder of which irrevocably elected prior to the Confirmation Date to reduce the amount thereof to $2,500.00 and to have such Allowed Claim included in Class 2 by indicating such election on the form utilized for purposes of acceptance or rejection of the Plan.

2.1.49  Vendor Unsecured Claims in excess of $2500 shall mean an Allowed Claim, (a) the amount of which (prior to any subdivision or assignment thereof after the Petition Date) is more than $2,500.00, or (b) the Holder of which has not irrevocably elected prior to the Confirmation Date to reduce the amount thereof to $2,500.00 and to have such Allowed Claim included in Class 2 by indicating such election on the form utilized for purposes of acceptance or rejection of the Plan.

2.1.50  VPI shall mean the Debtor, Vintage Park Investments, LLC, in Bankruptcy Case No 10-37511-H4-11.

2.1.51  VP GP shall mean the Debtor, VPI General Partner, LLC, in Bankruptcy Case No 10-37508-H4-11.

2.1.52  Wrightwood shall mean Wrightwood Capital Lender, LP

2.1.53  Wrightwood Note shall mean that Mezzanine Loan Agreement dated July 9, 2007 whereby Wrightwood agreed to loan Debtor Vintage Park Investments, LLC up to $7.615 million.

2.2     Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time. The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

2.3     Application of Definitions and Rules of Construction Contained in the Bankruptcy Code. Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

## ARTICLE 3
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Claims have not been classified and are treated and described in this section.

3.1     Administrative Claims Bar Date. Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan) against the Debtors, except for administrative expenses incurred in the ordinary course of operating the Debtors' business, must file an application for payment of such Administrative Claim on or within sixty (60) days after entry of the

Confirmation Order with actual service upon counsel for the Debtors, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices.  The Debtors shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date.  U.S. Trustee fees which accrue after confirmation shall be paid by the Reorganized Debtors until the case is closed or converted. The Debtors shall file with the Court and serve on the United States Trustee a monthly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.  It is not necessary for the U.S. Trustee to file a proof of claim.

3.2     Payment of Administrative Claims.  Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

3.3     Payment of Non-Tax Priority Claims.  Each Holder of an unpaid Allowed Non-Tax Priority Claim, if any, shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment.

3.4     Payment of Unsecured Priority Tax Claims.  Allowed Priority Tax Claims, if any, shall be paid in quarterly installments beginning on the first day of the first full calendar quarter following the Effective Date, and continuing on the same date of each succeeding calendar quarter for a period of twelve quarters, until such Claims are paid in full.  Such deferred cash payments shall have a value as of the Effective Date the Plan, equal to the allowed amount of such Claims.  In computing the present value of such Claims, the interest rate applied shall be the interest rate, which is currently 4.25%, as determined by Texas Tax Code Section 110.060(b) from the Effective Date until paid.

3.5     Payment to Professionals.  All payments to professionals for actual, necessary services and costs advanced in behalf of the bankruptcy cases up until the Confirmation Date shall be pursuant to Bankruptcy Court order and subject to the restrictions of 11 U.S.C. §330.  Professional fees incurred for services rendered and costs advanced subsequent to the Effective Date shall be the liability of the Reorganized IRH.

· **ARTICLE 4**
CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the treatment set forth below. The Plan will not provide any distributions on account of a Claim or Interest to the extent that such Claim or Interest has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or

nongovernmental. The Plan will not provide any distributions on account of a Claim or Interest, the payment of which has been assumed by a third party.

4.1    Class 1. Allowed Secured Claim of Taxing Authorities.

    4.1.1 Classification. Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for the year 2010 and any prior years secured by a lien on all of the Debtors' assets.

    4.1.2 Treatment. Allowed Secured Class 1 Claims shall be paid in cash in full when due without interest or penalty. The Allowed Secured Class 1 Claims Holders shall retain their liens until such time as they are paid in full. Class 1 Claims are not impaired.

4.2    Class 2.    Allowed Secured Claim of Capmark Bank of $34.7 million[1].

    4.2.1    Classification. Class 2 consists of the Allowed Secured Claims of Capmark secured by liens on substantially all of the Debtors' assets.

    4.2.2    Treatment. The Holder of the Allowed Secured Class 2 Claim shall receive a promissory note from the Reorganized IRH in the principal amount of $34.7 million or such other amount as determined by the Court, payable at a rate of interest equal to the prime rate, plus .75%, which is currently 4.00%, or such other rate as determined by the Court. Beginning on the first day of the first calendar month after the Effective Date, and continuing on the first day of each succeeding month, the Reorganized IRH shall make monthly principal and interest payments for 84 months based on a 30 year amortization schedule, with no prepayment penalty. The entire remaining principal balance due shall be paid at the end of the 84th month. The Holder of the Allowed Secured Class 2 Claim shall retain its liens as provided under its pre-Filing Date loan documents until such time as the claim is paid in accordance with the terms of this Plan. The deficiency balance of Capmark's claim shall be treated as a Class 4 Claim under Section 4.4 of the Plan. The Class 2 Claim is impaired.

4.3    Class 3. Allowed Vendor Unsecured Claims of $2500 or Less

    4.3.1    Classification:    Class 3 consists of the Allowed Vendor Unsecured Claims of $2500 or less.

    4.3.2    Treatment:    The Holders of Allowed Vendor Unsecured Class 3 Claims shall be paid in full without interest on the later of thirty (30)

---

[1] The proposed treatment for the Class 2 claim of Capmark Bank is based on the assumption that Capmark Bank will not exercise a Section 111(b) election. If Capmark Bank opts to exercise its Section 1111(b) election, the Debtors shall file an amended plan to reflect an alternative treatment for the Capmark Bank's claims.

days after the Effective Date or the date such Claims become Allowed Claims. The Class 3 Claims are impaired.

4.4     Class 4.  Allowed Unsecured Deficiency Claim of Capmark and Allowed Unsecured Vendor Claims in Excess of $2500

4.4.1     Classification.   Class 4 consists of the Allowed Unsecured Deficiency Claim held by Capmark and Allowed Unsecured Vendor Claims in excess of $2500. The Class 4 Claims are impaired.

4.4.2     Treatment.   Within thirty (30) days of the Effective Date, the Holders of Class 4 Claims shall receive in full and final satisfaction of their Allowed Claims a single cash payment equal to ten percent (10%) of the Allowed Claim, plus new Unsecured Promissory Notes for the full remaining balance of their Allowed Class 4 Claims with the following terms:

| | | |
|---|---|---|
| o | Maturity: | The earlier of sale or refinance of the Property or 7 years from the Effective Date. |
| o | Interest Rate: | Prime rate, plus 2% |
| o | Amortization: | None |
| o | Payments: | None until maturity |

4.5     Class 5.  Allowed Wrightwood Claim of $2.6 million against Vintage Park Investment, LLC.

4.5.1     Classification.  Class 5 consists of the Allowed Claim of Wrightwood of $2.6 Million against VPI.  The Class 5 Claim is impaired under both Option 1 and Option 2.

4.5.2     Treatment.   The Holder of the Allowed Class 5 Claim shall elect either Option 1 or Option 2 described below.

Option 1:   The term of the Wrightwood Note shall be extended until December 31, 2017 and Wrightwood shall receive no payment with respect to the Wrightwood Note until Capmark Bank's Class 2 and Class 4 Claims are paid in full in accordance with the terms of this Plan. Otherwise, the Allowed Class 5 Claim shall be paid by the Reorganized VPI in full pursuant to the express terms of the original loan documents.

Option 2:     In full and final satisfaction of its allowed claim, the Holder of the Allowed Class 5 Claim shall receive shares of New Partnership Interests totaling 49% of the outstanding shares with (i) a Preferred return of $20,000/month, payable only from excess funds as solely determined by the Reorganized Debtors and (ii) in the event the Property is sold or refinanced, shall be fully redeemable by the

Reorganized IRH in the amount of $2.6 million. The New Partnership Interests so issued shall be free and clear of all liens, claims, interests, and encumbrances of any kind.

4.6      Class 6. Allowed Senior Secured Claims of Mechanics and Materialmen.

    4.6.1      Classification. Class 6 consists of the Allowed Senior Secured Claims of mechanics and materialmen whose liens are determined to be senior to the Class 2 Claim.

    4.6.2      Treatment. The Holders of Class 6 Allowed Senior Secured Claims of mechanics and materialmen shall be paid in full without interest on the later of thirty (30) days after the Effective Date or the date such Claims become Allowed Claims. To the extent the Holder of a Class 6 Claim does not have a lien that is senior to the Class 2 Claim, it shall be treated as a Class 4 Allowed Unsecured Vendor Claim. The Class 6 Claims are impaired.

4.7      Class 7. Allowed Claims of Affiliates.

    4.7.1      Classification. Class 7 consists of the Allowed Claims of Affiliates. The Class 7 Claims are impaired.

    4.7.2      Treatment. The Holders of Class 7 Claims shall be permitted to offset any amount due the Debtors. Otherwise, the remaining balance, if any, shall be subordinated to the payment in full of all Claims in Classes 1 through 7.

4.8      Class 8. Allowed Interests of Equity Holders.

    4.8.1      Classification. Class 8 consists of the Allowed Equity Interests in IRH and VP GP. The Class 8 Interests are impaired.

    4.8.2      Treatment. Existing Equity Interests in IRH and VP GP shall be cancelled, and New Partnership Interests in the Reorganized IRH and VP GP shall be issued as provided for in Section 6.6 of the Plan. In exchange for the Equity Infusion of $1 million, to be paid within 30 days of the Effective Date, the Allowed Class 8 Equity Interest Holders will each receive a pro rata share of either (i) 100% of the New Partnership Interests if Wrightwood elects Option 1, described herein in Section 4.5.2, or (ii) 51% of the New Partnership Interests if Wrightwood elects Options 2, described herein in Section 4.5.2. Reorganized IRH shall hold an option to purchase all of the New Partnership Interests granted to Wrightwood in Section 4.5.2 for a purchase price of $2.6 million. The New Partnership Interests so issued shall be free and clear of all liens, claims, interests, and encumbrances of any kind.

## ARTICLE 5
## VOTING OF CLAIMS AND INTERESTS

Classes 2, 3, 4, 5, 6 and 7 of Claims and the Class 8 Equity Interests are impaired and therefore are entitled to vote on this Plan. Accordingly, the acceptances of Classes 2, 3, 4, 5, 6 and 7 Claims and Class 8 Equity Interests must be solicited. Class 1 is not impaired under the Plan and is therefore not entitled to vote on the Plan.

## ARTICLE 6
## MEANS FOR EXECUTION OF PLAN

6.1     Vesting of Property of the Estate in Reorganized Debtors. On the Effective Date of the Plan, all property of the Debtors and of their Estates shall vest in each of the Reorganized Debtors free and clear of liens, claims and encumbrances, except as otherwise provided by the terms of this Plan. There shall be no substantive consolidation.

6.2     Continuation of Business Operations. From and after the Effective Date of the Plan, the Reorganized Debtors shall be authorized to continue their normal business operations and enter into such transactions as they deem advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan. The funds from the Equity Infusion, along with cash flow of the operations, shall be used to fund payments required by the Plan.

6.3     Equity Infusion: The principals of VPI shall collectively contribute $1 million to Reorganized IRH in exchanges for shares of New Partnership Interests as provided for in Section 4.7.1 herein.

6.4     Directors and Officers of Reorganized Debtors. The Directors and Officers of the Debtors are authorized to continue as Directors and Officers of the Reorganized Debtors from and after the Effective Date of the Plan.

6.5     Source of funds for Payments due on the Effective Date. The current operational revenues, collection of receivables and the Equity Infusion will be used to pay Administrative and Non-Tax Priority Claims, as well as any additional claims required by the Plan that are due on the Effective Date.

6.6     New Partnership Interests. The Reorganized IRH will issue New Partnership Interests as follows:

   o   If Wrightwood elects Option 1 described herein in Section 4.5.2, Allowed Class 7 Equity Interest Holders will each receive a pro rata share of 100% of the New Partnership Interests, or
   o   If Wrightwood elects Option 2 described herein in Section 4.5.2, Allowed Class 7 Equity Interest Holders will each receive a pro rata share of 51%

708712-1                                    13

of the New Partnership Interests, and Wrightwood shall receive the remaining 49% of the New Partnership Interests.

o  If Wrightwood elects Option 2 described herein in Section 4.5.2, the Reorganized IRH and VP GP shall hold options to purchase all of the New Partnership Interests granted to Wrightwood for a purchase price of $2.6 million.

6.7  <u>Disbursing Agent</u>. Reorganized VP GP shall act as the Disbursing Agent. If Reorganized VP GP chooses not to act as the Disbursing Agent, then it shall designate a substitute.

6.8  <u>Exclusive Rights and Duties of the Disbursing Agent.</u> The duties of the Disbursing Agent shall be as follows:

6.8.1  <u>Distribution to Creditors with Administrative Claims</u>.  In accordance with Article 3 of the Plan the Disbursing Agent shall pay the Administrative and Priority Claims first out of Cash on hand generated from operations.

6.8.2  <u>Distributions to Creditors with Allowed Claims</u>.  The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article 4 of the Plan.

6.8.3  <u>Distribution to Creditors with Disputed Claims that Subsequently Become Allowed Claims</u>.  Payment to each holder of a Disputed Claim, to the extent it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of claims to which the disputed claim belongs.  Payments shall be made ten days after the Disputed Claims become Allowed Claims.

6.9  <u>Powers of the Disbursing Agent</u>. The Disbursing Agent shall have full power and authority to do the following:

6.9.1  Make disbursements to Administrative and Priority Creditors in accordance with Article 3 and other Creditors in accordance with Article 4 of the Plan.

6.9.2  File all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Bankruptcy Estates.

6.9.3  Take any and all actions, including the filing or defense of any civil actions or Claim objections necessary to accomplish the above.

6.9.4  Employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase insurance

with such coverage and limits as are reasonably necessary, including covering liabilities incurred in connection with its service as Disbursing Agent.

6.9.5     Suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

6.10     Presumption of Disbursing Agent's Authority.  In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of its engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the assets, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

6.11     Limitation on Disbursing Agent's Liability.

6.11.1     Except gross negligence or willful misconduct, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Bankruptcy Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

6.11.2     The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except for gross negligence or willful default or misconduct of the Disbursing Agent.

6.12     Delivery of Distributions.  Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Equity

708712-1                                                     15

Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

6.13    Time Bar for Cash Payments. Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

6.14    Unclaimed Property. If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account. If the Person entitled to any such distributions is located within six months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person. If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall be returned to the Reorganized IRH and such Person shall have waived and forfeited its right to such distributions. Nothing contained in this Plan shall require the Disbursing Agent to attempt to locate such Person. It is the obligation of each Person claiming rights under the Plan to keep the Disbursing Agent advised of current address by sending written notice of any changes to the Disbursing Agent.

6.15    Minimum Payment. The minimum amount of any distribution shall be $25. If a payment anticipated by the Plan is due in an amount less than $25, then such payments is hereby waived and the funds shall be retained by the Reorganized IRH.

6.16    Fractional Dollars. Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.17    Distribution Dates. Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day. The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

708712-1                                    16

6.18     Orders Respecting Claims Distribution.  After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

6.19     Avoidance Actions.  The Reorganized Debtors do not anticipate pursuing any Avoidance Actions after the Effective Date, except to the extent necessary as part of the Claim resolution process.  Therefore, the Reorganized Debtors releases all Avoidance Actions and claims except those necessary as part of the Claim resolution process.

6.20     Agreements, Instruments and Documents.  All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable. The Reorganized Debtors shall have a power of attorney, coupled with an interest, to execute and deliver any Plan Document to the extent that counterparty to such document fails to execute and deliver any document required to effectuate the Plan following 20 days written notice and request to such counterparty.

6.21     Further Authorization.  The Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.  The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

## ARTICLE 7
## CRAMDOWN AND CLAIMS ALLOWANCE

7.1     Cramdown.  In the event any Class rejects the Plan, the Debtor will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

**IN THE EVENT ANY CLASS REJECTS THE PLAN THE DEBTORS WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES.  THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

7.2     Allowance of Claims under the Plan.  Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against the Debtors, if the parties cannot agree upon such allowance.  It is expected that the Debtors and/or the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, before and after confirmation of the Plan.  The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.

708712-1                                          17

7.3    Objection Deadline.  As soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

7.4    Prosecution of Objections.  On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claim may be made by the Reorganized Debtors and/or Disbursing Agent.


## ARTICLE 8
## DEFAULT

8.1    If any of the following events occur, the Reorganized Debtors will be in breach of this Plan ("Default"):

8.1.1    Failure to pay any amount due under the Plan when due; or

8.1.2    Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

8.2    Should the Reorganized Debtors be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Reorganized Debtors fail to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation or default, then any Creditor owed a distribution, which the Reorganized Debtors fail to make when due, at its option, may declare that the Reorganized Debtors are in default of this Plan.


## ARTICLE 9
## EXECUTORY CONTRACTS AND LEASES

9.1    The Debtors hereby assume the executory contracts and leases set forth in Exhibit "A" and any executory contracts and leases previously assumed pursuant to bankruptcy court order.  All licenses issued to the Debtors by governmental authorities are assumed.

9.2    The Debtors hereby reject all executory contracts and leases not otherwise assumed in this Plan or by prior Court order.

9.3    Any Claims arising from rejection of an executory contract or lease must be filed on or before 20 days from the Effective Date.  Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan.  Any Claims arising from rejection, if timely filed and allowed, will be treated as General Unsecured Claims.

708712-1                                                      18

9.4      Except as specifically provided for herein, the Debtors shall pay all cure claims in the amount listed on Exhibit "A" on or before 30 days after the Administrative Claims Bar Date set in paragraph 3.1, unless a Claim is filed before the Administrative Claims Bar Date in an amount different from that set forth on Exhibit "A", in which case the cure claim will be paid when and if allowed by Final Order of the Bankruptcy Court.

## ARTICLE 10
## MODIFICATION OF THE PLAN

10.1     The Debtors may propose amendments and modifications of this Plan prior to the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice.  After the Confirmation Date, the Debtors may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan.  After the Confirmation Date, the Debtors may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; provided, however, that such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure.  With respect to all proposed modifications to the Plan both before and after confirmation, the Debtors shall comply with the requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE 11
## CONDITIONS PRECEDENT

11.1     Conditions to Confirmation.  Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to the Debtors shall have been satisfied.  In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

11.2     Waiver and Nonfulfillment of Conditions to Confirmation. Nonfulfillment of any condition to confirmation of the Plan may be waived only by the Debtors.  In the event the Debtors determine that the conditions to the Plan's confirmation which they may waive cannot be satisfied and should not, in their

708712-1                                    19

discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

11.3    Confirmation Order Provisions for Pre-Effective Date Actions.   The Confirmation Order shall empower and authorize the Debtors to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

11.4    Conditions to the Effective Date.  The following are conditions precedent to the effectiveness of the Plan: (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order; (ii) Debtors do not withdraw the Plan at any time prior to the Effective Date; and (iii) the Debtors shall have sufficient Cash on hand, including the Equity Infusion to make the initial payments and distributions required under the Plan.

11.5    Waiver and Nonfulfillment of Conditions to Effective Date. Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by the Debtors.  In the event that the Debtors determine that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in their sole discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.


**ARTICLE 12**
JURISDICTION OF THE BANKRUPTCY COURT

12.1    Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

12.1.1    To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

12.1.2    To estimate, liquidate, classify or determine any Claim against the Debtors, including claims for compensation or reimbursement;

12.1.3    To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtors and any other entity having rights under the Plan as may be necessary to implement the Plan;

12.1.4    To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or

this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

12.1.5    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

12.1.6    To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

12.1.7    To adjudicate all Claims to any lien on any of the Debtors' assets;

12.1.8    To hear and determine matters concerning state, local and federal taxes pursuant to the Bankruptcy Code, including (but not limited to) sections 346, 505 and 1146 thereof and to enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of the Debtors, whether before or after confirmation, including to determine any and all tax effects of the Plan;

12.1.9    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

12.1.10    To determine all questions and disputes regarding title to assets and shares of the Debtors, Reorganized Debtors or of the Bankruptcy Estate, as may be necessary to implement the Plan;

12.1.11    To enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require persons holding Claims being released to release Claims in compliance with the Plan;

12.1.12    To fix the value of collateral in connection with determining Claims;

12.1.13    To enter a final decree closing the case and making such final administrative provisions for the case as may be necessary or appropriate; and

12.1.14    To, even after entry of a final decree, hear any cases enforcing Bankruptcy Code section 525.

708712-1                                              21

12.2    Failure of the Bankruptcy Court to Exercise Jurisdiction.    If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 12.1 of the Plan, this Article 12 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE 13**
EFFECT OF CONFIRMATION

.  13.1    Binding Effect.    As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtors, any entity acquiring property under the Plan and any Creditor, Equity Holder of the Debtors, whether or not the Claim or Interest of such Creditor or Equity Holder is impaired under the Plan and whether or not such Creditor or Equity Holder has accepted the Plan, and the United States and any licensing authority.  After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Holders, except to the extent as provided for in the Plan as the case may be.  The Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph 13.1.

13.2    Satisfaction of Claims and Interests.    Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all Interests.

13.3    Vesting of Property.    Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all Property of the Bankruptcy Estates shall vest in the Debtors free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all assets of the IRH, VP GP, and VPI Bankruptcy Estates shall vest in each such Reorganized Debtor free and clear of all Claims, liens, and encumbrances.  Moreover, all licenses and permits held by the Debtors shall continue be held by them.

13.4    Discharge.    Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtors shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

13.5    **Injunction.  The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims in any manner other than as provided for in the Plan.  All Holders of Claims shall be prohibited from asserting against the Debtors, Reorganized Debtors or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not**

708712-1                                    22

such Holder filed a proof of Claim.  Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan. This injunction also permits the Reorganized Debtors to enforce 11 U.S.C. §525(a) upon improper revocation or restriction of licenses.

      13.6    Preservation of Setoff Rights.  In the event that the Debtors have a Claim of any nature whatsoever against the Holders of Claims, the Debtor may, but is not required to setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors of any Claim that the Debtors has against the Holder of Claims.  Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such right, except as set forth herein with respect to Class 6, shall not be permitted unless the Creditor provides the Debtors with written notice of the intent to affect such setoff or recoupment.  If the Debtors or the Disbursing Agent, as applicable, objects in writing within twenty (20) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court.  In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the Claim held by the Bankruptcy Estates.

      **13.7**    **Releases.**  **On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, the Debtors, and to the maximum extent provided by law, their agents, release and forever discharge all claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:**

      **13.7.1**    **Guy Savage, G.J. Willem Noltes and David A. Brannen and all other officers and equity holders of the Debtors. ("Insider Released Parties"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtors or the Bankruptcy Estates and/or on account of the Debtors' Cases.  The release of these Insider Released Parties shall be conditioned upon the occurrence of the Effective Date.**

      **13.7.2**    **The Debtors' Professionals will be released from any and all claims and liabilities other than willful misconduct or if the release is otherwise restricted by the Texas Disciplinary Rules of Professional Conduct.**

708712-1                                                    23

13.8    Guarantors. Nothing herein shall be deemed to release the liability of any non-debtor guarantor to a Creditor; provided, however, that so long as the Debtors are current with respect to all of their obligations under this Plan and the Confirmation Order Creditors may not pursue collection of their Claims from any guarantor. If the Debtors commit an uncured default in their obligations hereunder, then and only then may Creditors seek relief against guarantors.

13.9    Lawsuits. On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against the Debtors and any guarantor except proof of Claim and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to the Debtors. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. **All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions.** All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtors or any entity proceeding in the name of or for the benefit of the Debtors against a person shall remain in place only with respect to the claim(s) asserted by the Debtor or such other entity, and shall become property of the Post-Confirmation Reorganized Debtor to prosecute, settle or dismiss as it sees fit.

13.10    Insurance. Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtors or Reorganized Debtors in which the Debtors or any of the Debtors' representatives or agents is or was the insured party; the Reorganized Debtors shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order. Each insurance company is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtors' bankruptcy, the Plan or any provision within the Plan.

13.11    U.S. Trustee Fees. The Debtors shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting these cases to cases under Chapter 7 or dismisses the cases. After confirmation, the Reorganized Debtors shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by them for each month or portion thereof, which these Chapter 11 cases remain open in a format prescribed by the United States Trustee.

13.12    Term of Stays. Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

708712-1

**ARTICLE 14**
MISCELLANEOUS PROVISIONS

14.1    Corporate Authority.  All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further board or stockholder resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known Creditors of the Debtors, all Interest Holders, and all current directors of the Debtors.

14.2    Documentation.  The Debtors, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan.  The Bankruptcy Court may determine that the failure of any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the terms of the Plan and the Confirmation Order.  On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the Confirmation Date shall be executed and delivered by the Debtors, and Creditors, as the case may be.  All Documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

14.3    Integration Clause.  This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, Creditors, Equity Interests and the parties-in-interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

14.4    Primacy of the Plan and Confirmation Order.  To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

14.5    Severability.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the proponent may modify the Plan in accordance with Article 12 hereof so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.6    No Admission.  Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by the Debtors of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be deemed to be a waiver of any rights which the Debtors may possess against any other party.  In the event that the Effective Date does not occur, neither the Plan, Disclosure Statement nor any statement contained

herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Debtors' cases.

14.7    Bankruptcy Restrictions.  From and after the Effective Date, the Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines.  The Disbursing Agent may, on behalf of the Debtors, compromise Claims and/or controversies post-Effective Date without the need of notice or Bankruptcy Court approval.  No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

14.8    Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 cases, including the documents executed pursuant to the Plan.

14.9    Closing of Case.  As soon as the Debtors have either obtained substantial consummation or otherwise performed their obligations under the Plan the Reorganized Debtors shall seek the entry of an Order of the Court closing these cases.

14.10    Successors and Assigns.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

14.11    Notices.  All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:

>   IRH Vintage Park Partners, LP, VPI General Partner, LLC, or Vintage
>   Park Investments, LLC
>   2000 Eagle Point Corporate Drive
>   Birmingham, AL 35242

with copies to:

>   Edward L. Rothberg
>   Hoover Slovacek, LLP
>   5847 San Felipe, Suite 2200
>   Houston, Texas 77057

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the case.  Any such holder of Claim or Interest may designate in

708712-1                                26

writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtors.

14.12   Validity and Enforceability.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

14.13   Plan Supplement.  Any and all exhibits or schedules not filed with the Plan shall be contained in a Plan Supplement to be filed within ten (10) days of the Confirmation Hearing.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

Respectfully submitted this 5ᵗʰ day of November, 2010.

### IRH VINTAGE PARK PARTNERS, LP

*G.J. Willem Noltes with permission by*
*/s/ Melissa A. Haselden*

By:_____
G.J. Willem Noltes

### VPI GENERAL PARTNER, LLC

*G.J. Willem Noltes with permission by*
*/s/ Melissa A. Haselden*

By:_____
G.J. Willem Noltes

### VINTAGE PARK INVESTMENTS, LLC

*G.J. Willem Noltes with permission by*
*/s/ Melissa A. Haselden*

By:_____
G.J. Willem Noltes

EDWARD L. ROTHBERG
State Bar No. 17313990
MELISSA A. HASELDEN
State Bar No. 00794778
T. JOSH JUDD
State Bar No. 24036866
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile:  713.977.5395

ATTORNEYS FOR DEBTORS

**EXHIBIT A**

EXECUTORY CONTRACTS TO BE ASSUMED

**(To be supplemented prior to the confirmation hearing)**

# EXHIBIT B

# CLAIMS ANALYSIS

**IRH Vintage Park Partners, L.P.**
**VPI General Partner, LLC**
**Vintage Park Investments, LLC**
**Case No. 10-37503-H4-11**
**Claims Analysis**                              Secured

| Creditors | Scheduled Amount | Debtor | Proof of Claim No. | Proof of Claim Amount | Claim Amount for Plan Totals | Allowed By Order | Adjusted Claims | Pro Rata Distribution | Comments / Disputed / Setoff |
|---|---|---|---|---|---|---|---|---|---|
| Capmark Bank | 41,617,100.68 | IRH | | | | | | | |
| Hamilton-Steele Outdoor Accents | 6,955.06 | | | | | | | | Will have an M&M Lien Claim |
| Wrightwood Capital | 2,593,425.88 | Vintage | | | | | | | |
| | | | | | | | | | |
| TOTAL: | 44,217,481.62 | | | | | | | | |



**IRH Vintage Park Partners, L.P.**
**VPI General Partner, LLC**
**Vintage Park Investments, LLC**
**Case No. 10-37503-H4-11**
Claims Analysis                    Priority

| Creditors | Scheduled Amount | Proof of Claim No. | Debtor | Proof of Claim Amount | Claim Amount for Plan Totals | Allowed By Order | Adjusted Claims | Pro Rata Distribution | Comments / Disputed / Setoff |
|---|---|---|---|---|---|---|---|---|---|
| Charterwood M.U.D. | Unk | | | | | | | | |
| Harris County | Unk | 2 | IRH | 426,695.29 | | | | | Disputed; Proof of claim included tax statement for non-debtor entity Vintage Park LLC.  Correct amount (per 2010 tax statement) is $230,143.80 |
| Internal Revenue Service | | 4 | IRH | 4,188.80 | | | | | |
| Internal Revenue Service | | 4 | VPI | 1,500.00 | | | | | |
| Internal Revenue Service | | 1 | Vintage | 1,500.00 | | | | | |
| Klein I.S.D. | Unk | 1 | IRH | 389,016.91 | | | | | |
| Texas Comptroller of Public Accounts | 8,699.42 | | | | | | | | |
| | | | | | | | | | |
| **TOTAL:** | **8,699.42** | | | **822,901.00** | | | | | |

IRH Vintage Park Partners, L.P.
VPI General Partner, LLC
Vintage Park Investments, LLC
Case No. 10-37503-H4-11
Claims Analysis                    Unsecured

| Creditors | Scheduled Amount | Proof of Claim No. | Debtor | Proof of Claim Amount | Claim Amount for Plan Totals | Allowed By Order | Adjusted Claims | Pro Rata Distribution | Comments / Disputed / Setoff |
|---|---|---|---|---|---|---|---|---|---|
| A.S.A.P. Apartment Specialists | 1,537.50 | | | | | | | | |
| AAA Plumbers | 1,089.20 | | | | | | | | |
| ADP, Inc. | 406.14 | | | | | | | | |
| Aim Apartment Locators | 422.50 | 8 | IRH | 1,282.50 | | | | | Also filed Claim No. 6, in VPI General Partners case in the amount of $1,267.50. |
| Alarms Unlimited | 126.33 | | | | | | | | |
| Alarmtechs | 50.00 | | | | | | | | |
| All Floors Carpet Cleaning | 169.73 | | | | | | | | |
| Apartment Data Services | 1,680.00 | | | | | | | | |
| Apartment Directions, Inc | 1,590.00 | 3 | VPI | 1,590.00 | | | | | |
| AT & T | 485.70 | | | | | | | | |
| AT & T Home Entertainment | 174.99 | | | | | | | | |
| A-Team Services & Utilities LLC | 220.00 | | | | | | | | |
| AU Optronics | 200.00 | | | | | | | | |
| Brentmoor Apartments* | 239,000.00 | | | | | | | | |
| Brilliant Promotional Products | 84.44 | | | | | | | | |
| Cbeyond Online | 1,144.25 | | | | | | | | |
| Celeritas Services, LLP | 2,502.80 | | | | | | | | |
| CenterPoint Energy | 502.60 | 1 | VPI | 944.31 | | | | | P.O. Box 4981, H, T 77210 |
| Charterwood M.U.D. | 25,394.10 | | | | | | | | |
| Chero-Key Piping Co. | 3,208.86 | 2 | VPI | 3,208.86 | | | | | |
| Classified Ventures, LLC | 598.00 | | | | | | | | |
| Community Controls | 195.60 | 3 | IRH | 195.60 | | | | | |
| Craven Carpet, Inc. | 5,690.25 | | | | | | | | |
| CSS USA | 171.99 | | | | | | | | |
| D.I. Environmental, Inc. | 600.00 | | | | | | | | |
| Direct Energy | 14,240.33 | 7 | IRH | 15,152.81 | | | | | |
| Employment Screening Services | 189.00 | | | | | | | | |
| Exer-Tech Inc. | 1,944.80 | | | | | | | | |
| Federal Express | 130.13 | | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Findit Apartment Locators | 1,545.00 | | | | | | |
| Great American Business | 305.52 | | | | | | |
| Hamilton-Steele Outdoor Accents | 6,955.06 | | | | | | Will have an M&M Lien Claim |
| Hardman Signs, LP | 313.93 | | | | | | |
| HD Supply Facilities Maintenance | 2,525.48 | 5 | IRH | 4,096.80 | | | |
| Houston Multi-Housing Corp. | 73.61 | | | | | | |
| INDATUS by ICiM Corporation | 276.00 | | | | | | |
| Interline Brands, Inc. - Bankruptcy | | 11 | IRH | 1,566.78 | | | |
| Investment Realty LLC* | 297,312.64 | | | | | | |
| J&L Distributors | 531.01 | | | | | | |
| JobTarget.com | 75.00 | | | | | | |
| Katten Muchin Rosenman LLP | 1,391.00 | | | | | | |
| Keller Williams Realty | 1,650.00 | | | | | | |
| Key Trak, Inc. | 97.84 | | | | | | |
| Maintenance Supply Headquarters | 4,208.89 | | | | | | |
| Meyer Smith Incorporated | 160.00 | | | | | | |
| NAMCO Manufacturing | 2,046.15 | | | | | | |
| National Corporate Research, LTD | 157.00 | | | | | | |
| Oakwood Corporate | 151.00 | | | | | | |
| Orkin Innovative Pest Control | 1,331.10 | | | | | | |
| Ozarka | 60.26 | | | | | | |
| Paces Park Apartments* | 95,000.00 | | | | | | |
| Peachtree Business Products | 24.00 | | | | | | |
| Planet Telecom | 210.00 | | | | | | |
| Prism Electric | 325.00 | | | | | | |
| Quill | 430.18 | | | | | | |
| R.M. Roofing | 325.00 | | | | | | |
| Remington Park Apartments* | 813,298.80 | | | | | | |
| RentGrow, Inc. | 1,647.05 | | | | | | |
| San Paloma Apartments* | 796,640.53 | | | | | | |
| Sherwin Williams Co. | 554.00 | | | | | | |
| Somers-Pardue Agency, Inc. | 100.00 | | | | | | |
| TEC Cooking Systems | 104.00 | | | | | | |
| Texas Apartment Locators Houston | 404.50 | | | | | | |
| Texscape Services | 8,823.93 | | | | | | |
| Till, Hester, Eyer & Brown, P.C. | 342.39 | 6 | IRH | 11,459.20 | | | |
| Today Realty | | 9 | IRH | 1,500.00 | | | |
| Today Realty | | 10 | IRH | 1,515.00 | | | |
| Umovefree | 1,665.00 | 5 | VPI | 5,137.00 | | | |
| United States Postal Service | 264.00 | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Waste Management | 1,447.98 | | | | | | | |
| Weichert Realtors | 517.50 | | | | | | | |
| Whirlpool | 798.45 | | | | | | | |
| | 798.45 | | | | | | | |
| * Affiliates | | | | | | | | |
| **TOTAL:** | **2,348,636.49** | | | **47,648.86** | | | | |

For clarification purposes, after allowed offsets, the net amounts due/owed to/from the above idented affiliates are as follows:

| | |
|---|---|
| Brentmoor Apartments | 239,000.00 |
| Investment Realty, LLC | -37,687.36 (Due to IRH Vintage Park Partners, LP) |
| Paces Park Apartments | 55,000.00 |
| Remington Park Apartments | 813,298.80 |
| San Paloma Apartments | 738,287.83 |

# EXHIBIT C

# FINANCIAL PROJECTIONS

**Vintage Park Apartment Homes**
**Profit & Loss**
January - December 2009

| | Jan 2009 | Feb 2009 | Mar 2009 | Apr 2009 | May 2009 | Jun 2009 | Jul 2009 | Aug 2009 | Sep 2009 | Oct 2009 | Nov 2009 | Dec 2009 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | |
| **2000 Income** | | | | | | | | | | | | | |
| **2001 Rental Income** | | | | | | | | | | | | | |
| 2002 Market Rent | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 5,513,496.00 |
| 2003 Loss to Old Lease | (18,109.00) | (17,682.00) | (18,784.00) | (21,424.00) | (14,203.00) | (11,157.00) | (13,865.00) | (10,479.00) | (12,513.00) | (13,764.00) | (37,350.00) | (26,432.00) | (203,762.00) |
| 2005 Rental Concessions | (19,542.00) | (20,437.00) | (28,297.00) | (30,912.00) | (32,976.00) | (31,789.00) | (35,611.00) | (37,622.00) | (44,399.00) | (35,123.00) | (44,287.00) | (41,309.00) | (403,306.00) |
| 2006 Concession Payback | 1,954.00 | 1,478.00 | 608.00 | 787.55 | | 7,189.00 | 256.53 | 2,285.45 | 629.25 | 689.00 | | | 15,885.18 |
| 2007 Vacancy Loss | (31,789.00) | (22,645.00) | (23,798.00) | (21,956.00) | (31,765.00) | (29,543.00) | (23,102.00) | (21,345.00) | (31,764.00) | (30,773.00) | (41,289.00) | (39,911.00) | (349,680.00) |
| 2009 Employee Apartment | (11,387.00) | (5,335.00) | (4,149.00) | (1,435.14) | (351.00) | (3,387.00) | (2,242.00) | (3,651.00) | (3,650.00) | (2,759.00) | (1,899.00) | (2,017.00) | (42,662.14) |
| 2010 Model Apartment | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (35,580.00) |
| 2012 Past Due End of Prior Month | | 1,534.11 | 118.86 | 1,809.45 | | 120.99 | 115.59 | 4,747.80 | 28.00 | 252.17 | 73.00 | 478.00 | 9,277.97 |
| 2014 Prepaid End of Prior Month | (42,356.53) | (24,800.36) | (34,725.14) | (34,853.93) | (34,853.18) | (29,710.37) | (24,988.79) | (25,089.90) | (23,474.29) | (28,632.02) | (32,586.93) | (52,994.63) | (388,055.07) |
| 2016 Prepaid End of Current Month | 26,979.49 | 36,536.75 | 34,853.93 | 34,853.18 | 30,139.38 | 25,592.44 | 28,404.50 | 24,158.29 | 28,632.02 | 34,917.17 | 54,055.63 | 52,987.42 | 408,531.60 |
| 2018 Past Due End of Current Month | (1,316.91) | (118.86) | (1,809.45) | | | (115.59) | (4,747.80) | (28.00) | (252.17) | (73.00) | (478.00) | | (9,991.99) |
| 2020 Write-Off to Collections | | | (3,942.00) | (7,294.00) | (1,094.43) | (1,199.00) | | | | | | (883.39) | (14,312.62) |
| 2021 Adjustments | 20,481.55 | 2,597.41 | 5,753.46 | 3,162.55 | 943.00 | 181.00 | (2,554.00) | (3,204.13) | (977.80) | 2,050.00 | 4,768.00 | 173.21 | 34,244.25 |
| **Total 2001 Rental Income** | $ 381,417.60 $ | 407,589.06 $ | 384,432.66 $ | 379,241.66 $ | 373,320.77 $ | 375,886.47 $ | 383,111.90 $ | 383,036.59 $ | 368,209.21 $ | 365,117.57 $ | 368,177.70 $ | 345,632.40 $ | 4,534,372.98 |
| **2300 Other Income** | | | | | | | | | | | | | |
| 2301 Application Fees | 1,000.00 | 1,735.00 | 1,087.50 | 490.00 | 1,215.00 | 1,295.00 | 1,402.00 | 525.00 | 1,171.00 | 600.00 | 485.00 | 206.00 | 11,211.50 |
| 2302 Amenity Fees | 2,898.00 | | 1,000.00 | 1,700.00 | 2,732.50 | 3,085.00 | 4,405.00 | 1,600.00 | 1,900.00 | 100.00 | 800.00 | 300.00 | 20,320.50 |
| 2305 Attorney Collections | 2,383.16 | | 161.59 | | | 362.90 | 56.70 | 56.70 | | 476.20 | 744.74 | | 4,241.99 |
| 2307 Damages | 100.00 | | 100.00 | 129.25 | 30.00 | 1,243.79 | | 74.00 | | 76.00 | | | 1,753.04 |
| 2309 Forfeited Deposits | | 381.20 | | 326.00 | | | | | | 150.00 | (25.00) | | 812.20 |
| 2311 Late Fees | 543.21 | 790.00 | 1,450.00 | 100.00 | 120.00 | | 620.00 | 565.03 | 360.00 | 727.00 | 442.00 | 812.80 | 6,530.04 |
| 2313 Administration Fees | | 400.00 | | | | | | | | | | | 400.00 |
| 2314 Cable Income | 449.70 | 803.14 | 1,284.79 | | 640.81 | 585.01 | 660.01 | | | 584.12 | 482.92 | | 5,690.50 |
| 2315 Miscellaneous Income | | | | | | 44.00 | | | | | | | 44.00 |
| 2317 NSF Fees | 150.00 | 250.00 | 350.00 | 250.00 | | | 250.00 | 300.00 | 50.00 | 185.00 | 50.00 | 150.00 | 1,985.00 |
| 2318 Pet Fees | 546.00 | 350.00 | 100.00 | 130.00 | 130.00 | 807.00 | 857.00 | 81.00 | 130.00 | 70.00 | 80.00 | | 3,281.00 |
| 2321 Termination Fees | 0.50 | 216.20 | | | 1,327.00 | 3,122.55 | | 500.00 | | | | | 5,166.25 |
| 2323 Vending Income | | | | | | | 499.41 | 488.57 | 57.20 | 69.39 | 544.83 | | 1,698.50 |
| 2325 Water Reimbursement | 5,203.22 | 8,641.50 | 6,199.99 | 6,401.47 | 6,869.07 | 9,662.03 | 5,558.40 | 6,453.46 | 8,473.14 | 5,370.45 | 5,825.40 | 6,213.39 | 77,968.51 |
| 2326 Trash Reimbursement | 24.00 | | | | | | | | | | | | 24.00 |
| 2328 Electricity Reimbursement | 1,028.00 | 689.54 | 1,197.35 | 787.73 | 1,027.70 | 570.33 | 939.78 | 1,545.85 | 827.45 | 414.03 | 225.45 | 226.44 | 9,449.75 |
| 2329 Water Service Fees | 205.00 | (5.00) | 75.00 | 325.00 | 285.84 | 459.00 | 552.00 | 645.19 | 740.00 | 59.00 | | 50.00 | 3,391.03 |


EXHIBIT
C-1
tabbies

**Vintage Park Apartment Homes**
**Profit & Loss**
January - December 2009

| | | Jan 2009 | Feb 2009 | Mar 2009 | Apr 2009 | May 2009 | Jun 2009 | Jul 2009 | Aug 2009 | Sep 2009 | Oct 2009 | Nov 2009 | Dec 2009 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2330 Keys/Locks & Cards | | | (126.80) | | | | | 60.00 | 350.00 | 157.00 | 71.00 | 105.00 | 35.00 | 651.20 |
| 2331 Month to Month | | 113.00 | 678.00 | 942.00 | 1,374.00 | 748.00 | 1,524.00 | 745.00 | 449.00 | 310.00 | 1,279.00 | 1,237.00 | 320.00 | 9,719.00 |
| 2332 Carpet Fees | | | | 75.00 | | 111.00 | | | | | | | | 186.00 |
| 2333 Cleaning Fees | | 220.30 | 380.00 | 327.00 | 306.00 | 99.00 | 35.00 | | | 50.00 | | | | 1,417.30 |
| 2334 Garages | | 1,981.37 | 3,261.00 | 2,120.00 | 2,192.00 | 1,995.00 | 1,868.00 | 1,891.00 | 2,625.00 | 2,888.16 | 2,696.00 | 2,980.16 | 3,061.40 | 29,649.09 |
| 2335 Gate Remote | | 1,029.00 | | (40.00) | 35.00 | 100.00 | 50.00 | 100.00 | 135.00 | 100.00 | 76.00 | | | 1,585.00 |
| 2336 Transfer Fees | | 24.00 | | | | | | | | | | | | 24.00 |
| Total 2300 Other Income | $ | 17,896.56 $ | 16,405.78 $ | 16,420.21 $ | 14,545.45 $ | 17,229.92 $ | 25,513.61 $ | 18,994.87 $ | 16,404.54 $ | 15,645.42 $ | 13,891.00 $ | 13,301.09 $ | 11,919.86 $ | 197,371.40 |
| Total 2000 Income | $ | 399,316.15 $ | 423,994.83 $ | 400,852.87 $ | 393,787.51 $ | 389,550.69 $ | 401,400.08 $ | 401,256.77 $ | 399,441.23 $ | 383,854.63 $ | 399,108.57 $ | 381,478.79 $ | 357,752.26 $ | 4,731,744.38 |
| Total Income | $ | 399,316.15 $ | 423,994.83 $ | 400,852.87 $ | 393,787.51 $ | 389,550.69 $ | 401,400.08 $ | 401,256.77 $ | 399,441.23 $ | 383,854.63 $ | 399,108.57 $ | 381,478.79 $ | 357,752.26 $ | 4,731,744.38 |
| Expenses | | | | | | | | | | | | | | |
| 3000 Expenses | | | | | | | | | | | | | | |
| 3100 Taxes & Insurance | | | | | | | | | | | | | | 0.00 |
| 3101 Property Taxes | | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 63,403.00 | 760,836.00 |
| 3110 Property Insurance | | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 98,387.16 |
| 3115 Tax Consultants | | 80.00 | 256.12 | | | | | | | | | | | 336.12 |
| 3116 Other Taxes & Fees | | | | | | 250.00 | 147.00 | 1,494.00 | | 3,619.82 | | | | 5,510.82 |
| Total 3100 Taxes & Insurance | $ | 71,681.93 $ | 71,858.05 $ | 71,601.93 $ | 71,601.93 $ | 71,851.93 $ | 71,748.93 $ | 73,095.93 $ | 71,601.93 $ | 75,221.75 $ | 71,601.93 $ | 71,601.93 $ | 71,601.93 $ | 865,070.10 |
| 3200 Professional Fees | | | | | | | | | | | | | | 0.00 |
| 3202 Eviction Attorney Fees | | | | 184.00 | 130.00 | | | 505.84 | | | | | | 819.84 |
| 3204 Management Fees | | 12,475.08 | 12,175.48 | 12,231.53 | 11,782.09 | 11,597.64 | 11,002.05 | 11,686.13 | 11,522.56 | 11,296.03 | 11,272.88 | 11,470.01 | 13,587.40 | 142,098.88 |
| 3206 Accounting Fees | | 5,000.00 | | | | | | | | | | | | 5,000.00 |
| 3207 Legal Fees | | | | | | | | 9,875.00 | 16,847.42 | 3,300.00 | 19,622.07 | 7,382.56 | 14,467.70 | 71,474.75 |
| 3208 Other Professional/Consult Fees | | | | | | | 355.25 | | 355.25 | | | 2,260.00 | | 2,960.50 |
| 3209 Employee Background Checks | | 220.00 | | 165.00 | 110.00 | 169.00 | 354.00 | 118.00 | 83.00 | | | | | 1,219.00 |
| Total 3200 Professional Fees | $ | 17,695.08 $ | 12,175.48 $ | 12,580.53 $ | 12,022.09 $ | 11,766.64 $ | 11,711.30 $ | 22,184.97 $ | 28,808.23 $ | 14,596.03 $ | 30,894.95 $ | 21,082.57 $ | 28,055.10 $ | 223,572.97 |
| 3300 Utilities | | | | | | | | | | | | | | |
| 3301 Electric - Common Area | | 6,602.54 | 5,495.59 | 6,925.03 | 5,583.24 | 5,814.20 | 6,108.31 | 5,927.33 | 6,995.51 | 6,388.66 | 6,347.69 | 4,516.41 | 3,125.40 | 69,828.11 |
| 3302 Electric - Vacant | | 2,408.76 | 2,028.82 | 1,984.56 | 1,860.68 | 1,719.46 | 2,570.32 | 3,305.95 | 5,049.45 | 3,252.88 | 2,678.91 | 1,928.56 | 1,683.85 | 30,472.41 |
| 3303 Gas - Common Area | | | | 2,807.92 | 632.11 | 692.59 | | 994.28 | 355.51 | 411.55 | 449.57 | 566.23 | | 6,909.76 |
| 3305 Water Irrigation | | 1,038.47 | 133.99 | 1,013.60 | 1,334.18 | 2,010.25 | 2,579.60 | 3,619.60 | 4,788.54 | 4,233.10 | 1,477.26 | 502.60 | 695.43 | 22,927.32 |
| 3307 Water - Common Area | | 9,526.13 | 11,343.55 | 9,942.38 | 10,003.93 | 9,056.30 | 9,755.73 | 8,751.05 | 9,752.20 | 10,035.60 | 10,880.52 | 10,223.45 | 11,397.67 | 121,578.51 |
| 3310 Trash Removal | | 1,075.25 | 1,057.76 | 1,060.73 | 1,058.74 | 1,185.68 | 1,167.25 | 1,209.00 | 1,200.97 | 1,214.76 | 1,212.00 | 658.57 | 1,247.02 | 13,583.53 |
| 3311 Cable | | | | 151.72 | | 192.58 | 71.25 | 71.25 | | 78.75 | 71.25 | 19.11 | 90.36 | 807.50 |
| Total 3300 Utilities | $ | 20,651.25 $ | 20,059.81 $ | 23,786.13 $ | 20,473.08 $ | 20,672.04 $ | 21,770.46 $ | 24,978.76 $ | 28,219.43 $ | 25,615.30 $ | 23,117.20 $ | 18,613.15 $ | 18,240.63 $ | 265,107.24 |
| 3400 Repair & Maintenance | | | | | | | | | | | | | | |
| 3401 Appliance Contract/Repairs | | | | | | | | | | 581.09 | | | | 581.09 |
| 3403 Appliance Parts & Supplies | | 156.55 | | 143.97 | 304.41 | 653.66 | | | 68.00 | | 25.01 | 286.11 | 162.33 | 1,800.10 |
| 3406 Bulbs & Ballasts | | 61.29 | 82.84 | 258.68 | 231.11 | 594.25 | 188.79 | 183.03 | 321.80 | 914.29 | 152.43 | 150.49 | 45.21 | 3,134.01 |
| 3407 Carpet/Vinyl Repairs | | | 75.76 | 51.42 | 121.79 | 51.42 | | 117.54 | 170.10 | 438.19 | 366.06 | | | 1,394.38 |
| 3408 Carpet Cleaning Contract | | | | | | | | | | 216.43 | | | | 216.43 |

## Vintage Park Apartment Homes
### Profit & Loss
#### January - December 2009

| | Jan 2009 | Feb 2009 | Mar 2009 | Apr 2009 | May 2009 | Jun 2009 | Jul 2009 | Aug 2009 | Sep 2009 | Oct 2009 | Nov 2009 | Dec 2009 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3410 Carpet Cleaning Supplies | 6.09 | 68.27 | 13.00 | 43.02 | 53.88 | | | 158.10 | 129.61 | | | 15.00 | 484.97 |
| 3414 Cleaning Supplies | 238.80 | 232.41 | 384.01 | 304.86 | 361.16 | 509.75 | 754.21 | 149.04 | 878.40 | 318.66 | 179.60 | 254.03 | 4,554.95 |
| 3416 Paint Purchase | 81.19 | 160.88 | | 180.99 | 358.64 | 181.56 | 303.68 | 132.91 | 356.58 | | 236.47 | | 1,992.90 |
| 3418 Electrical Repair/Maintenance Contract | | | | | | 35.95 | | | | | | | 35.95 |
| 3420 Electrical Supplies | 130.52 | | | | | 8.63 | | 20.02 | 22.71 | 107.84 | 13.80 | 62.14 | 34.72 | 400.38 |
| 3422 Exterior Building | 809.71 | (722.71) | 1,093.62 | | | | | | | | | | 1,180.62 |
| 3424 Exterminating | | 403.34 | 806.68 | 492.34 | 565.72 | 565.72 | 914.93 | 565.72 | 403.34 | 422.63 | 403.34 | 403.34 | 5,947.10 |
| 3426 Fire & Safety | | | | | | | | | 305.00 | 50.00 | 50.00 | | 405.00 |
| 3427 General Maintenance | | 11.87 | 85.21 | | 207.20 | 192.06 | 84.53 | 15.95 | 87.19 | 26.93 | 33.49 | | 744.43 |
| 3430 HVAC Supplies | 22.98 | 217.81 | 22.98 | 78.84 | 263.75 | 280.80 | 179.33 | 505.14 | 344.99 | 448.99 | 91.32 | | 2,454.95 |
| 3432 Interior Building Repairs | | | | | | | | | 295.52 | | | | 295.52 |
| 3436 Keys & Locks | 29.16 | 5.40 | 68.13 | 12.97 | 102.62 | 42.41 | | 43.78 | 162.65 | 12.07 | 44.58 | | 523.77 |
| 3438 Landscape Contract | 3,166.31 | 3,166.31 | 3,166.31 | 3,166.31 | | 3,464.00 | 3,166.31 | 3,166.31 | 3,166.31 | 3,166.31 | 3,166.31 | 3,166.31 | 38,293.41 |
| 3440 Landscape Supplies | | | | | | | | | 38.00 | 25.00 | 15.00 | | 78.00 |
| 3441 Light Fixtures | | | | | 233.82 | | | | 66.89 | 98.83 | (88.77) | | 312.57 |
| 3444 Paint Supplies | 39.58 | 12.52 | 147.48 | 36.30 | 7.56 | 100.65 | 224.50 | 49.78 | 116.39 | | 59.08 | 124.36 | 920.18 |
| 3445 Plumbing Supplies | | 16.21 | 122.67 | 91.76 | 55.88 | 70.81 | 20.95 | 190.33 | 201.46 | 17.63 | | | 787.92 |
| 3447 Plumbing Contract/Repairs | | | | | | | | | 448.50 | | | | 448.50 |
| 3448 Hardware/Doors/Knobs | 10.59 | 21.62 | 52.76 | 16.21 | (34.55) | | 30.82 | 133.96 | 15.78 | 2.17 | 14.90 | 157.39 | 421.65 |
| 3449 Pool Supplies | | 150.94 | 696.69 | 478.34 | 365.76 | 566.19 | 1,309.91 | 456.35 | 650.30 | 283.59 | 162.46 | | 5,157.53 |
| 3450 Pool Repairs | | | | 10.79 | | 41.29 | | | | | | | 52.08 |
| 3454 Blinds & Shades | 118.41 | | | 134.87 | 17.94 | | 751.07 | 268.10 | | | 92.24 | | 1,382.63 |
| 3456 Window/Glass Repair | 297.69 | | | | | | | | 129.25 | | 501.42 | | 928.36 |
| 3465 Gate/Remote Repairs | | | | 35.17 | 674.91 | 35.17 | 138.03 | 485.83 | 583.48 | 389.70 | 326.29 | | 2,698.58 |
| Total 3400 Repair & Maintenance | $ 5,160.85 $ | 3,903.27 $ | 7,113.81 $ | 5,738.19 $ | 7,669.93 $ | 6,263.78 $ | 8,177.06 $ | 6,631.97 $ | 10,345.92 $ | 6,128.12 $ | 5,769.47 $ | 4,377.69 $ | 77,507.87 |
| **3500 Administrative Expenses** | | | | | | | | | | | | | |
| 3501 Ads Print & Magazines | 2,507.55 | 2,972.55 | 1,743.55 | 2,471.55 | | 3,400.00 | 1,584.00 | 1,003.00 | 1,591.00 | 2,815.72 | 728.00 | 1,474.00 | 22,650.92 |
| 3502 Marketing Expense | 1,345.41 | 58.93 | 240.23 | 3,087.23 | 139.52 | 719.51 | 221.84 | 1,762.04 | 609.16 | 271.26 | 340.49 | 1,977.40 | 10,771.04 |
| 3503 Ads Billboard | | | | | | | | 351.75 | 519.60 | | | 259.67 | 1,130.02 |
| 3505 Ads Online | | | 429.00 | 1,409.00 | | | | | | | | | 1,838.00 |
| 3507 Ads Bootleg Signs/Flyers | | 220.33 | | 331.57 | | 1,098.97 | | 259.18 | | | 35.00 | | 1,945.05 |
| 3511 Ads Help Wanted | | 99.00 | 150.00 | 99.00 | | | | 75.00 | | | | | 423.00 |
| 3512 Apartment Locator Services | 1,098.00 | 3,995.00 | | 2,086.50 | | 3,632.50 | 3,462.13 | 6,614.25 | 4,726.50 | 1,859.00 | 1,679.25 | 3,357.00 | 32,711.13 |
| 3513 Travel Auto Plane | 615.42 | | 735.24 | 1,522.80 | 2,382.22 | 3,613.54 | | 1,732.46 | 322.02 | 104.98 | | 184.62 | 11,413.30 |
| 3515 Travel Hotel | 313.50 | | 469.72 | 465.26 | 813.78 | 926.51 | | 621.00 | | | | | 3,609.77 |
| 3517 Travel Food | | | | 64.84 | | 199.99 | | | | | | | 264.83 |
| 3518 Credit Check Fees | 634.60 | 626.60 | 981.70 | 1,253.40 | 772.20 | 677.60 | 995.40 | 1,079.20 | 1,382.90 | 783.00 | 759.20 | 439.75 | 10,384.75 |
| 3521 Overnight Delivery | 169.53 | 161.93 | 181.04 | 397.86 | 750.87 | 365.58 | 126.09 | 885.10 | 276.69 | 155.55 | 171.47 | 159.33 | 3,800.64 |
| 3522 Computer Maintenance | | | | | | 162.38 | | | | | | | 162.38 |
| 3524 Computer Software | 0.97 | | 382.88 | 20.18 | | 491.74 | 243.56 | | 390.00 | 92.01 | | 390.00 | 1,991.34 |
| 3525 Internet Service Providers | 35.81 | | | | | | | | | | | | 35.81 |

## Vintage Park Apartment Homes
### Profit & Loss
January – December 2009

| | Jan 2009 | Feb 2009 | Mar 2009 | Apr 2009 | May 2009 | Jun 2009 | Jul 2009 | Aug 2009 | Sep 2009 | Oct 2009 | Nov 2009 | Dec 2009 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3526 Shopping Reports | 95.00 | | 410.00 | 415.00 | | | 645.00 | | 275.00 | 90.00 | 90.00 | | 2,020.00 |
| 3528 Office Equipment Leases | 338.63 | 167.81 | 262.24 | 443.11 | 187.73 | | 712.13 | 192.23 | 175.56 | 591.94 | 194.79 | 175.56 | 3,439.73 |
| 3530 Office Supplies | 255.49 | 305.72 | 278.77 | 370.83 | 558.53 | 550.54 | 329.34 | 304.82 | 274.73 | 247.51 | 275.35 | 71.88 | 3,823.51 |
| 3531 Postage | 336.00 | 16.80 | 33.60 | 39.84 | 95.85 | 132.00 | 35.20 | 334.40 | 131.00 | 68.00 | 43.00 | | 1,285.49 |
| 3532 Payroll Preparation | 392.51 | 534.70 | 353.50 | 287.05 | 357.73 | 443.59 | 309.02 | 436.61 | 258.69 | 432.18 | 438.81 | 335.33 | 4,520.81 |
| 3533 Stationary/Name Tags | 281.18 | | 24.00 | | 205.74 | | 78.00 | 113.80 | 270.42 | 363.09 | 32.00 | | 1,368.33 |
| 3534 Uniforms | 9.70 | | | | | | 65.90 | | 53.51 | | | | 129.11 |
| 3535 Referral Fees | 1,800.00 | 3,600.00 | 7,200.00 | | | 900.00 | 3,500.00 | | | (25.00) | | | 16,975.00 |
| 3537 Resident Retention | 324.80 | 247.94 | 482.29 | 205.30 | 689.50 | 53.47 | 452.73 | 234.89 | 334.73 | 300.12 | 286.54 | 170.63 | 3,672.94 |
| 3538 Fitness Center Repairs/Equipment | 175.00 | | | 175.00 | 189.43 | | 1,334.07 | | | 189.44 | | | 2,062.94 |
| 3540 Alarm Expense | 111.54 | 50.00 | 111.54 | 50.00 | 236.19 | 50.00 | 111.54 | 626.98 | 51.54 | | | 50.00 | 1,459.33 |
| 3542 Telephone | 2,215.23 | 468.25 | 2,000.59 | 2,057.83 | 1,665.00 | 1,577.84 | 1,459.95 | 1,503.35 | 1,488.49 | 1,699.94 | 1,630.15 | 1,620.55 | 19,558.98 |
| 3545 Bank Charges | 281.05 | 314.01 | 439.02 | 307.76 | 354.34 | 386.70 | 398.91 | 411.59 | 510.70 | 280.81 | 602.45 | 411.65 | 4,688.99 |
| 3546 Subscription & Dues | | | | | | | | 484.29 | | | | | 484.29 |
| 3547 Gate Expenses | 200.00 | | | | | | 92.01 | | | | | 308.51 | 600.52 |
| 3548 Training | | | | | 49.92 | | | | | | | | 49.92 |
| 3555 Managers/Leasing Meeting | 37.50 | 38.12 | 556.81 | 45.14 | | | 340.77 | | | | | | 1,018.34 |
| 3565 Gifts | 250.00 | | | | 84.65 | | | | | | | | 334.65 |
| 3596 Misc General Administrative | (750.00) | | 20.00 | | | 130.73 | | | | | | | (599.27) |
| **Total 3500 Administrative Expenses** | $ 12,598.62 | 13,970.69 | 17,445.72 | 17,670.70 | 9,344.55 | 20,157.16 | 14,637.64 | 20,569.11 | 14,032.23 | 10,116.57 | 7,506.50 | 11,384.66 | 170,025.37 |
| **3600 Payroll Expenses** | | | | | | | | | | | | | |
| 3601 Property Manager | 5,721.76 | 5,040.39 | 5,040.39 | 5,290.39 | 4,574.66 | 8,568.63 | 7,346.28 | 7,346.28 | 12,403.20 | 13,332.62 | 12,443.35 | 8,629.95 | 93,738.90 |
| 3602 Assistant Manager | 4,119.41 | 2,860.95 | 2,862.08 | 2,765.76 | 2,372.22 | 2,928.50 | 3,512.28 | 2,943.36 | 3,291.15 | 3,584.33 | 2,865.71 | 1,858.38 | 35,784.22 |
| 3603 Leasing Agent | 8,319.60 | 4,737.61 | 5,675.02 | 4,134.32 | 3,116.64 | 4,659.46 | 7,042.16 | 6,630.12 | 6,641.40 | 4,639.74 | 4,293.36 | 4,462.40 | 64,221.85 |
| 3604 Maintenance Techs | 5,096.94 | 2,494.38 | 4,806.53 | 4,585.49 | 4,990.95 | 4,285.40 | 4,879.55 | 4,297.60 | 4,501.20 | 4,544.95 | 4,103.40 | 4,532.20 | 52,679.19 |
| 3605 Maintenance Supervisor | 3,499.20 | 2,842.74 | 3,177.54 | 2,070.16 | 2,579.00 | 3,258.50 | 4,105.35 | 3,459.00 | 3,714.60 | 3,540.60 | 2,509.20 | 3,672.40 | 38,567.71 |
| 3606 Grounds/Painter | 2,605.46 | 2,080.00 | 1,145.69 | 2,426.19 | 2,277.99 | 2,140.97 | 2,557.10 | 2,240.16 | 2,381.99 | 2,347.15 | 2,130.31 | 2,321.93 | 26,654.94 |
| 3607 Housekeeping | 1,674.07 | 1,374.46 | 1,572.54 | 1,693.57 | 1,288.94 | 1,674.40 | 1,898.00 | 1,682.70 | 1,778.50 | 1,776.20 | 1,538.70 | 1,774.90 | 20,028.08 |
| 3608 Overtime | 353.06 | 890.33 | 1,093.46 | 748.38 | 2,213.67 | 2,295.85 | 484.05 | 1,339.76 | 687.93 | 498.06 | 320.33 | 333.60 | 11,236.48 |
| 3610 Accounting | 1,403.75 | 1,403.75 | 1,403.75 | 1,403.75 | 2,303.62 | 2,303.62 | 2,303.62 | 2,385.23 | 2,431.88 | 2,431.88 | 1,706.91 | 1,706.91 | 23,188.67 |
| 3620 Regional Manager | 5,000.00 | 5,000.00 | (5,000.00) | | | | | | | | | | 5,000.00 |
| 3621 Leasing Bonuses | 2,650.00 | 1,175.00 | 3,300.00 | 240.00 | | | 1,500.00 | 390.00 | 2,445.00 | 1,950.00 | 3,775.00 | 6,115.00 | 23,550.00 |
| 3622 Payroll Taxes | 3,598.69 | 2,105.21 | 3,008.28 | 2,401.53 | 2,495.11 | 2,722.21 | 2,684.61 | 2,704.73 | 2,945.77 | 2,691.92 | 2,406.93 | 2,385.69 | 32,410.68 |
| 3623 Worker's Compensation | 1,199.35 | 0.00 | 1,189.35 | 1,203.31 | 950.00 | | 3,454.00 | 1,164.20 | | | 298.84 | 5,785.18 | 15,264.23 |
| 3624 Health Insurance | 766.50 | 2,114.25 | 1,444.25 | (643.07) | (138.30) | 763.70 | 1,137.13 | 645.40 | 3,399.40 | 3,749.70 | 2,990.70 | 3,630.00 | 19,488.86 |
| 3625 Life & Disability Insurance | 91.32 | 1,313.36 | 107.21 | 114.71 | 40.20 | 55.92 | 159.61 | 200.50 | 269.80 | 175.84 | | 222.32 | 2,697.79 |
| 3675 Payroll Reimbursements | | | | | | | | | | | | (1,147.30) | (1,147.30) |
| **Total 3600 Payroll Expenses** | $ 46,363.11 | 35,432.43 | 30,736.09 | 28,444.51 | 28,754.70 | 33,568.15 | 43,264.15 | 37,248.34 | 46,809.02 | 45,441.29 | 41,326.06 | 45,870.24 | 463,374.13 |
| **Total 3000 Expenses** | $ 174,565.64 | 157,409.73 | 163,264.21 | 155,950.41 | 150,079.79 | 165,309.76 | 186,459.42 | 193,369.01 | 186,620.25 | 187,308.06 | 165,898.66 | 175,530.47 | 2,085,757.65 |

## Vintage Park Apartment Homes
### Profit & Loss
#### January – December 2009

| | Jan 2009 | Feb 2009 | Mar 2009 | Apr 2009 | May 2009 | Jun 2009 | Jul 2009 | Aug 2009 | Sep 2009 | Oct 2009 | Nov 2009 | Dec 2009 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NOI before Debt Service & Capital Improvements | $ 224,780.11 | $ 266,685.10 | $ 237,596.86 | $ 237,837.10 | $ 239,470.90 | $ 236,893.30 | $ 214,747.35 | $ 206,072.22 | $ 197,234.38 | $ 211,808.91 | $ 216,696.11 | $ 176,221.79 | $ 2,665,885.73 |
| **4000 Debt Service** | | | | | | | | | | | | | |
| 4001 Interest | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 173,021.00 | 2,076,252.00 |
| 4002 Reserve Replacement | 4,190.94 | 4,190.94 | | | 4,190.94 | 4,190.94 | 4,190.94 | 4,190.94 | 4,200.94 | 4,190.74 | | | 33,537.32 |
| 4003 Debt Service Interest Wrightwood | 69,967.78 | 44,976.01 | 44,839.78 | | | 90,121.55 | 48,825.75 | | | | 44,664.56 | 43,223.76 | 431,444.94 |
| **Total 4000 Debt Service** | $ 247,179.72 | $ 222,187.95 | $ 217,860.78 | $ 173,021.00 | $ 267,333.49 | $ 224,037.69 | $ 177,211.94 | $ 224,037.69 | $ 177,221.94 | $ 177,211.74 | $ 217,685.56 | $ 216,244.76 | $ 2,541,234.26 |
| **5000 Capital Improvements** | | | | | | | | | | | | | |
| 5001 Appliances | 811.87 | 554.22 | | 547.45 | 358.14 | 535.09 | | 168.95 | | | | | 3,003.71 |
| 5003 Building Improvements | | | 294.44 | | 702.01 | | 647.08 | | | | 2,378.34 | | 4,022.67 |
| 5004 Floor Coverings | 910.28 | 1,362.28 | 3,309.01 | 1,133.71 | | 2,481.87 | 1,133.71 | 6,278.32 | 3,765.54 | 9,786.33 | 337.65 | 903.54 | 31,405.44 |
| 5005 HVAC | | | | | 358.14 | | | | | | | | 358.14 |
| 5008 Landscaping-New | | | 3,788.75 | | 7,306.88 | | | 3,464.00 | | | 3,788.75 | | 18,348.38 |
| 5009 Roof Repairs | | | | | 265.00 | | | | | | | | 265.00 |
| 5010 Pool | | | | 4,248.81 | 530.42 | 3,245.58 | | | | | | | 8,024.81 |
| 5011 Computer Software | 1,683.10 | | | | | | | | 552.10 | | 1,286.34 | 1,683.10 | 5,184.64 |
| 5012 Computer Hardware | | | | | | | 2,619.65 | | 306.83 | 1,484.87 | | | 4,411.35 |
| 5016 Radios & Pagers | | | | | | | | 930.22 | | | | | 930.22 |
| 5060 Audit Costs | 4,981.01 | | | 1,048.13 | 9,033.37 | | | 4,289.75 | | 3,273.75 | 542.50 | | 23,147.51 |
| **Total 5000 Capital Improvements** | $ 8,386.26 | $ 1,926.50 | $ 7,392.20 | $ 6,978.10 | $ 18,549.86 | $ 9,832.40 | $ 6,049.54 | $ 9,912.27 | $ 7,888.22 | $ 14,195.94 | $ 5,412.94 | $ 2,586.64 | $ 99,093.07 |
| **Total Expenses** | $ 430,111.82 | $ 381,524.18 | $ 388,517.19 | $ 335,649.51 | $ 435,963.24 | $ 399,179.87 | $ 369,720.60 | $ 427,318.97 | $ 371,740.41 | $ 378,706.84 | $ 388,997.18 | $ 398,341.87 | $ 4,706,071.98 |
| **Net Operating Income** | $ (30,795.87) | $ 42,470.65 | $ 12,335.68 | $ 57,838.00 | $ (46,412.55) | $ 2,220.21 | $ 31,489.87 | $ (27,877.74) | $ 12,114.22 | $ 20,401.73 | $ (7,518.39) | $ (40,589.61) | $ 25,672.40 |
| Other Expenses | | | | | | | | | | | | | |
| **6000 Depreciation** | | | | | | | | | | | | | |
| 6010 Buildings | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 1,482,697.32 |
| 6012 Appliances | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 174,063.96 |
| 6014 Parking Lots/Walks | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 26,351.28 |
| 6016 Signage, Landscaping & Misc Site Improvements | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 16,514.64 |
| 6017 Carpets | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 92,193.00 |
| 6019 FF&E | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 172,257.96 |
| **Total 6000 Depreciation** | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 1,964,078.16 |
| **Total Other Expenses** | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 1,964,078.16 |
| **Net Other Income** | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (1,964,078.16) |
| **Net Income** | $ (194,469.05) | $ (121,202.53) | $ (151,337.50) | $ (105,835.18) | $ (210,085.73) | $ (161,452.97) | $ (132,183.31) | $ (191,550.92) | $ (151,558.96) | $ (143,271.45) | $ (171,191.57) | $ (204,262.79) | $ (1,938,405.76) |

**Vintage Park Apartment Homes**
**Profit & Loss**
January - October, 2010

| | Jan 2010 | Feb 2010 | Mar 2010 | Apr 2010 | May 2010 | Jun 2010 | Jul 2010 | Aug 2010 | Sep 2010 | Oct 2010 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Income | | | | | | | | | | | |
| 2000 Income | | | | | | | | | | | 0.00 |
| 2001 Rental Income | | | | | | | | | | | 0.00 |
| 2002 Market Rent | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 459,458.00 | 4,594,580.00 |
| 2003 Loss to Old Lease | (33,080.00) | (42,661.00) | (31,793.00) | (37,240.00) | (36,365.00) | (39,017.00) | (44,777.00) | (46,577.00) | (49,707.00) | (52,138.00) | (413,355.00) |
| 2005 Rental Concessions | (37,219.00) | (30,321.00) | (39,511.00) | (33,287.00) | (33,567.00) | (42,289.00) | (54,112.00) | (59,433.00) | (64,211.00) | (66,747.00) | (460,697.00) |
| 2006 Concession Payback | | 1,059.00 | | 517.00 | 328.00 | 735.00 | 51.00 | | 492.00 | 3,033.39 | 6,215.39 |
| 2007 Vacancy Loss | (27,456.00) | (39,621.00) | (24,404.00) | (18,565.40) | (25,743.24) | (34,654.00) | (20,675.00) | (24,829.00) | (31,604.20) | (33,150.00) | (280,701.84) |
| 2009 Employee Apartment | (3,351.00) | (3,108.00) | (2,284.00) | (2,284.00) | (2,284.00) | (2,335.00) | (1,445.00) | (1,617.00) | (2,684.00) | (2,684.00) | (24,076.00) |
| 2010 Model Apartment | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (2,965.00) | (29,650.00) |
| 2012 Past Due End of Prior Month | 752.21 | 9,704.40 | 1,218.40 | 718.40 | 718.40 | 718.40 | 716.00 | 211.59 | 402.03 | | 15,159.83 |
| 2014 Prepaid End of Prior Month | (82,446.42) | (83,169.24) | (86,825.81) | (85,439.85) | (113,536.79) | (99,619.48) | (103,055.59) | (105,166.95) | (96,027.98) | (85,875.65) | (922,365.27) |
| 2016 Prepaid End of Current Month | 83,169.24 | 97,320.21 | 85,443.58 | 113,605.36 | 100,069.48 | 103,055.59 | 106,376.75 | 96,316.67 | 98,435.05 | 71,689.43 | 953,481.36 |
| 2018 Past Due End of Current Month | (9,704.40) | (1,218.40) | (718.40) | (718.40) | (718.40) | (718.40) | (211.59) | (402.03) | | (350.00) | (14,760.02) |
| 2020 Write-Off to Collections | | (4,490.00) | | (86.00) | (651.00) | (542.00) | (607.10) | (1,302.33) | (930.60) | (7,798.35) | (16,408.36) |
| 2021 Adjustments | 559.20 | (6,925.85) | 2,019.70 | (1,547.40) | 1,141.60 | 703.60 | (189.00) | 1,620.00 | 359.20 | 72.00 | (2,186.95) |
| 2050 Rents Received | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | |
| Total 2001 Rental Income | $ 377,716.83 | $ 353,062.12 | $ 359,938.67 | $ 392,165.98 | $ 346,883.05 | $ 342,330.71 | $ 338,564.47 | $ 314,313.95 | $ 309,016.52 | $ 272,543.82 | $ 3,405,236.12 |
| 2300 Other Income | | | | | | | | | | | 0.00 |
| 2301 Application Fees | 1,271.00 | 1,485.00 | 935.00 | 575.00 | 1,585.00 | 1,850.00 | 1,500.00 | 884.00 | 1,080.00 | 1,320.00 | 12,485.00 |
| 2302 Amenity Fees | 1,162.00 | 1,112.00 | 704.00 | 440.00 | 973.00 | 1,271.00 | 935.00 | 1,124.00 | 836.00 | 781.00 | 9,338.00 |
| 2305 Attorney Collections | | | 99.22 | 64.64 | | | | | | | 163.86 |
| 2307 Damages | 749.89 | 155.00 | 150.00 | 1,414.60 | 50.00 | 230.00 | 95.00 | 195.00 | 430.40 | 820.00 | 4,289.89 |
| 2311 Late Fees | | 150.00 | 315.00 | 664.00 | 450.00 | 446.00 | 846.00 | 310.00 | 720.00 | 1,182.00 | 5,085.00 |
| 2314 Cable Income | | 625.78 | | | | 2,213.81 | | | | | 2,839.59 |
| 2315 Miscellaneous Income | 92.80 | 250.00 | 1,707.17 | 2,699.23 | 2,788.78 | | 2,995.80 | 2,362.00 | 2,505.84 | 2,501.27 | 17,302.89 |
| 2317 NSF Fees | 85.00 | 100.00 | 100.00 | 200.00 | 200.00 | 100.00 | 100.00 | 150.00 | 100.00 | 250.00 | 1,385.00 |
| 2318 Pet Fees | 415.00 | 835.00 | 250.00 | 250.00 | | 1,401.00 | 250.00 | | 750.00 | 350.00 | 4,501.00 |
| 2321 Termination Fees | | | | | | 279.00 | 235.00 | | | 6,790.95 | 7,304.95 |
| 2323 Vending Income | | | | | | | | 380.00 | | | 380.00 |
| 2325 Water Reimbursement | 7,973.10 | 6,200.40 | 6,385.20 | 6,599.26 | 6,986.60 | 6,838.49 | 6,669.03 | 6,544.39 | 6,369.86 | 6,618.28 | 67,414.61 |
| 2326 Trash Reimbursement | | 50.00 | | | | | | | | | 50.00 |
| 2328 Electricity Reimbursement | | 570.25 | 328.65 | | 176.40 | 1,751.93 | 244.93 | 142.97 | 215.36 | 115.43 | 3,544.18 |
| 2330 Keys/Locks & Cards | | 135.00 | | 165.00 | 85.00 | 140.00 | | 35.36 | 40.00 | 35.00 | 636.40 |
| 2331 Month to Month | 423.00 | 200.00 | 487.00 | 717.00 | 634.89 | 1,342.00 | 801.40 | 560.93 | 340.00 | 510.10 | 6,016.32 |



tabbles
EXHIBIT

| | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2332 Carpet Fees | | 100.00 | | | | 476.00 | 468.00 | 143.00 | | | 1,187.00 |
| 2333 Cleaning Fees | 276.00 | 415.00 | 8.00 | 240.00 | 241.80 | 210.00 | 276.00 | 135.00 | 240.00 | 155.00 | 2,196.80 |
| 2334 Garages | 3,142.00 | 3,904.40 | 3,664.40 | 3,586.60 | 3,594.00 | 4,191.00 | 3,800.00 | 3,769.60 | 4,158.00 | 4,000.00 | 37,790.00 |
| 2335 Gate Remote | | 35.00 | | | (492.00) | 100.00 | 35.00 | | | | (322.00) |
| 2337 Interest | | | | | 14.20 | | | | | | 14.20 |
| Total 2300 Other Income | $ 16,589.59 | $ 16,422.05 | $ 16,032.62 | $ 16,995.33 | $ 17,287.67 | $ 22,842.29 | $ 19,491.16 | $ 16,737.29 | $ 17,785.46 | $ 25,429.03 | 183,602.49 |
| | | | | | | | | | | | |
| Total 2000 Income | $ 393,306.42 | $ 369,484.17 | $ 374,671.29 | $ 409,161.31 | $ 363,170.72 | $ 365,173.00 | $ 358,045.63 | $ 331,051.24 | $ 326,901.98 | $ 297,972.85 | 3,588,938.61 |
| | | | | | | | | | | | |
| Total Income | $ 393,306.42 | $ 369,484.17 | $ 374,671.29 | $ 409,161.31 | $ 363,170.72 | $ 365,173.00 | $ 358,045.63 | $ 331,051.24 | $ 326,901.98 | $ 297,972.85 | 3,588,938.61 |
| Expenses | | | | | | | | | | | |
| 3000 Expenses | | | | | | | | | | | 0.00 |
| 3100 Taxes & Insurance | | | | | | | | | | | 0.00 |
| 3101 Property Taxes | 77,158.40 | 64,000.00 | 64,000.00 | 63,032.50 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 64,000.00 | 652,190.90 |
| 3110 Property Insurance | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 8,198.93 | 7,603.90 | 8,494.25 | 7,603.90 | 7,603.90 | 80,499.53 |
| 3112 Other Insurance | | | | | | | | 1,177.90 | | | 1,177.90 |
| 3115 Tax Consultants | | 69,166.17 | | | | | | | | | 69,166.17 |
| 3116 Other Taxes & Fees | | | | 3,620.00 | | 157.00 | | | | | 3,777.00 |
| | | | | | | | | | | | |
| Total 3100 Taxes & Insurance | $ 85,357.33 | $ 141,365.10 | $ 72,198.93 | $ 74,851.43 | $ 72,198.93 | $ 72,355.93 | $ 71,603.90 | $ 72,494.25 | $ 72,781.80 | $ 71,603.90 | 806,811.50 |
| 3200 Professional Fees | | | | | | | | | | | 0.00 |
| 3202 Eviction Attorney Fees | 96.00 | | | | | | | | 96.00 | | 288.00 |
| 3204 Management Fees | 9,274.13 | 10,153.02 | 11,320.26 | 11,168.92 | 12,062.65 | 10,732.42 | 11,538.07 | 11,333.04 | 10,739.23 | 10,637.78 | 109,156.72 |
| 3207 Legal Fees | | | 1,023.23 | | 4,564.49 | | 1,391.00 | 52,668.66 | 70,000.00 | | 129,947.38 |
| 3208 Other Professional/Consult Fees | | 2,592.39 | | | 100.00 | 1,863.80 | | | 10,478.80 | 2,600.00 | 17,634.99 |
| 3209 Employee Background Checks | 59.00 | | 35.00 | | 83.00 | 71.00 | | | 12.00 | | 260.00 |
| Total 3200 Professional Fees | $ 9,429.13 | $ 12,745.41 | $ 12,378.49 | $ 11,168.92 | $ 16,810.34 | $ 12,667.22 | $ 12,929.07 | $ 64,397.70 | $ 91,323.03 | $ 13,437.78 | 257,287.09 |
| 3300 Utilities | | | | | | | | | | | 0.00 |
| 3301 Electric - Common Area | 9,180.22 | 6,861.05 | 5,740.07 | 5,729.10 | 5,088.66 | 12,223.73 | 5,400.01 | 6,217.22 | 6,918.45 | 3,936.91 | 67,297.42 |
| 3302 Electric - Vacant | 1,553.22 | 1,993.32 | 2,043.24 | 1,037.35 | 568.70 | 4,723.72 | 1,267.90 | 1,355.20 | 1,434.64 | 1,349.38 | 17,321.67 |
| 3303 Gas - Common Area | 876.38 | 1,005.71 | 1,520.35 | 612.11 | 426.01 | 327.55 | 304.32 | 198.28 | (166.29) | 341.65 | 5,545.07 |
| 3305 Water Irrigation | 159.65 | 22.95 | 17.00 | 245.13 | 1,210.68 | 1,474.39 | 2,313.05 | 2,437.60 | 2,968.88 | 1,074.67 | 11,925.00 |
| 3307 Water - Common Area | 10,342.03 | 10,489.78 | 10,540.16 | 9,788.60 | 10,599.35 | 11,354.36 | 11,530.38 | 10,526.17 | 12,585.91 | 6,606.34 | 104,763.38 |
| 3310 Trash Removal | 1,485.14 | 1,223.57 | 1,245.78 | 1,266.38 | 1,273.74 | 1,448.02 | 1,503.44 | 1,443.01 | 1,547.98 | 1,437.72 | 13,875.18 |
| 3311 Cable | 75.75 | 64.81 | 73.42 | 80.92 | 96.19 | 174.99 | 174.99 | 176.92 | 100.06 | 1,152.58 | 2,076.56 |
| Total 3300 Utilities | $ 23,772.39 | $ 21,661.59 | $ 21,180.02 | $ 18,760.89 | $ 19,646.06 | $ 31,647.96 | $ 22,494.09 | $ 22,354.40 | $ 25,389.63 | $ 15,898.25 | 222,805.28 |
| 3400 Repair & Maintenance | | | | | | | | | | | 0.00 |
| 3403 Appliance Parts & Supplies | 498.87 | 113.45 | 200.78 | 52.48 | 644.90 | | 486.50 | 111.09 | 475.73 | | 2,581.80 |
| 3406 Bulbs & Ballasts | 215.79 | 582.31 | 420.47 | 395.66 | 277.93 | 324.63 | 414.15 | 373.78 | 317.10 | 87.92 | 3,409.74 |
| 3407 Carpet/Vinyl Repairs | 144.13 | | | 119.88 | | | | | | | 264.01 |
| 3408 Carpet Cleaning Contract | | 74.69 | | | | | | 189.73 | 1,857.69 | 1,458.36 | 3,570.47 |
| 3410 Carpet Cleaning Supplies | 18.96 | (87.16) | 17.00 | 20.00 | 17.65 | 26.00 | 12.00 | | | | 22.65 |

| Account | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3414 Cleaning Supplies | 33.51 | 609.29 | 329.66 | 243.44 | 437.82 | 352.84 | 378.66 | 696.82 | 618.60 | 436.79 | 4,137.43 |
| 3416 Paint Purchase | 126.06 | | 121.79 | 130.07 | 146.14 | 215.40 | 102.19 | 231.87 | | 269.73 | 1,343.25 |
| 3418 Electrical Repair/Maintenance Contract | | | | | | | 210.00 | | | | 210.00 |
| 3420 Electrical Supplies | 153.27 | 26.16 | 257.90 | | | 97.19 | 225.98 | 232.36 | 196.11 | 19.86 | 1,208.83 |
| 3422 Exterior Building | | | | 61.78 | | | | 429.00 | 104.00 | | 594.78 |
| 3424 Exterminating | 403.34 | 403.34 | 403.34 | 403.34 | 403.34 | 443.70 | 687.40 | | 458.28 | 443.70 | 4,249.78 |
| 3426 Fire & Safety | | 22.08 | | | | | 6.46 | | 27.03 | | 55.57 |
| 3427 General Maintenance | 66.30 | 149.49 | 185.72 | 428.65 | 94.57 | 63.53 | 81.95 | 39.50 | 295.29 | 74.50 | 1,479.50 |
| 3430 HVAC Supplies | | 37.92 | 109.12 | 389.38 | 128.21 | 419.02 | | 422.08 | 984.11 | 475.74 | 2,965.58 |
| 3432 Interior Building Repairs | | | | | | | | | 123.75 | | 123.75 |
| 3436 Keys & Locks | | | 63.83 | 19.47 | | 47.85 | 37.19 | 142.71 | 62.11 | | 373.16 |
| 3438 Landscape Contract | 3,166.31 | 3,166.31 | 3,166.31 | 3,166.31 | 3,166.31 | | 1,102.99 | 3,008.00 | 3,008.00 | 3,008.00 | 25,958.54 |
| 3441 Light Fixtures | | | | | | | | | 107.95 | 395.41 | 503.36 |
| 3444 Paint Supplies | 48.03 | 27.93 | 100.22 | 3.97 | 33.98 | | 94.16 | 322.13 | 136.87 | | 767.31 |
| 3445 Plumbing Supplies | 30.75 | 79.22 | 38.12 | 158.65 | 51.23 | 50.69 | 66.23 | 73.36 | 482.98 | 12.43 | 1,043.66 |
| 3447 Plumbing Contract/Repairs | | | 220.00 | | | 172.30 | 916.90 | | | | 1,309.20 |
| 3448 Hardware/Doors/Knobs | | | | | | 52.30 | | 81.48 | 25.38 | 162.54 | 321.70 |
| 3449 Pool Supplies | 258.46 | 323.37 | | 197.40 | 162.36 | 402.59 | 1,142.67 | 596.08 | 634.79 | 783.44 | 4,499.18 |
| 3454 Blinds & Shades | | | | 172.76 | 182.17 | 176.08 | | | 8.22 | | 539.23 |
| 3456 Window/Glass Repair | | | 148.59 | | | | | | 571.95 | | 720.54 |
| 3465 Gate/Remote Repairs | 142.86 | | 142.26 | 104.40 | 393.00 | | 195.60 | 160.00 | | | 1,138.12 |
| Total 3400 Repair & Maintenance | $ 5,300.64 | $ 5,528.40 | $ 5,925.11 | $ 6,067.62 | $ 6,364.43 | $ 3,536.42 | $ 5,525.63 | $ 7,033.89 | $ 10,643.10 | $ 7,465.88 | $ 63,391.12 |
| 3500 Administrative Expenses | | | | | | | | | | | 0.00 |
| 3501 Ads Print & Magazines | 2,055.00 | 1,098.00 | 1,098.00 | 669.00 | 769.00 | 769.00 | 370.00 | 370.00 | | | 7,198.00 |
| 3502 Marketing Expense | 618.66 | 124.97 | 21.11 | 28.11 | 28.11 | 32.11 | 320.11 | 21.11 | 423.00 | 21.11 | 1,638.40 |
| 3503 Ads Billboard | | | 288.22 | | | | | | | | 288.22 |
| 3505 Ads Online | | 370.00 | 7.00 | 7.00 | | | | | 300.00 | | 684.00 |
| 3511 Ads Help Wanted | 180.00 | 75.00 | | | | | 75.00 | 75.00 | | | 405.00 |
| 3512 Apartment Locator Services | 6,713.85 | 2,300.00 | 2,664.00 | 1,898.50 | 2,189.50 | 692.50 | 3,195.00 | 3,772.50 | | 4,472.00 | 27,897.85 |
| 3513 Travel Auto Plane | 25.00 | | 5.00 | 5.00 | 123.48 | | | | 1,582.86 | 687.80 | 2,429.14 |
| 3518 Credit Check Fees | 230.35 | 881.70 | 517.65 | 522.90 | 565.60 | 508.80 | 896.85 | 706.30 | 407.75 | | 5,219.90 |
| 3521 Overnight Delivery | 131.59 | 141.22 | 57.25 | 130.50 | 146.45 | 105.39 | 214.98 | 392.51 | 132.84 | 165.57 | 1,608.30 |
| 3522 Computer Maintenance | | | | | | 432.00 | | | | 182.79 | 614.79 |
| 3628 Office Equipment Leases | 678.36 | 188.45 | 204.13 | 366.89 | 184.35 | 175.56 | 535.42 | 192.16 | 175.58 | | 2,710.90 |
| 3530 Office Supplies | 512.40 | 369.00 | 326.48 | 99.13 | 5.36 | 444.19 | 99.36 | 772.43 | 36.91 | 677.96 | 3,342.22 |
| 3531 Postage | 120.94 | 137.54 | 132.00 | 132.00 | 176.00 | | 44.00 | 88.00 | 137.54 | | 1,055.02 |
| 3532 Payroll Preparation | 414.82 | 538.82 | 104.08 | 728.98 | 335.34 | 328.77 | 442.27 | 494.78 | 275.02 | 361.63 | 4,024.49 |
| 3534 Uniforms | | | | | | | 24.00 | | | | 24.00 |
| 3537 Resident Retention | 53.29 | 179.84 | 220.40 | 500.89 | 259.72 | 756.44 | 30.13 | | 87.40 | 50.74 | 2,138.85 |
| 3538 Fitness Center Repairs/Equipment | | | 1,376.48 | 189.44 | | 189.44 | | 189.44 | | | 1,944.80 |
| 3539 Signs & Graphics | | | | | | | | | 313.93 | | 313.93 |
| 3540 Alarm Expense | 50.00 | 50.00 | 176.33 | 50.00 | 50.00 | 135.00 | 135.00 | 50.00 | 150.00 | 531.76 | 1,378.09 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3542 Telephone | 1,531.71 | 711.40 | 716.56 | 1,275.43 | 1,848.81 | 1,989.43 | 1,862.21 | 743.96 | 1,013.17 | 803.92 | 12,496.60 |
| 3545 Bank Charges | 360.87 | 54.68 | 463.79 | 348.34 | 326.53 | 281.52 | 702.74 | 406.73 | 281.97 | 231.45 | 3,458.62 |
| 3546 Subscription & Dues | 300.00 | | | | | | | | 300.00 | | 600.00 |
| 3549 Security | | | | | | 171.99 | | | | | 171.99 |
| 3555 Managers/Leasing Meeting | | 28.12 | | | | | | | | | 28.12 |
| Total 3500 Administrative Expenses | $ 13,976.84 | $ 7,238.74 | $ 8,378.46 | $ 6,951.11 | $ 7,440.25 | $ 6,692.14 | $ 8,925.07 | $ 8,576.87 | $ 5,304.02 | $ 8,186.73 | 81,672.23 |
| 3600 Payroll Expenses | | | | | | | | | | | 0.00 |
| 3601 Property Manager | 5,023.95 | 5,023.95 | 5,023.95 | 5,023.95 | 5,023.95 | 5,023.95 | 5,023.95 | 5,232.28 | 5,440.61 | 7,307.14 | 53,147.68 |
| 3602 Assistant Manager | 3,050.95 | 2,793.99 | 3,070.50 | 2,885.76 | 2,895.41 | 3,029.97 | 1,934.25 | 1,868.04 | 3,192.84 | 3,524.42 | 28,245.83 |
| 3603 Leasing Agent | 5,227.08 | 3,442.42 | 2,583.82 | 4,853.52 | 4,561.62 | 4,750.20 | 4,809.14 | 4,834.28 | 4,675.72 | 4,085.48 | 43,803.28 |
| 3604 Maintenance Techs | 4,953.10 | 4,012.30 | 4,441.05 | 4,395.40 | 2,853.55 | 4,406.45 | 4,370.60 | 3,711.05 | 4,428.40 | 4,417.15 | 41,989.05 |
| 3605 Maintenance Supervisor | 4,116.00 | 3,266.80 | 3,554.60 | 3,476.40 | 3,384.00 | 3,538.20 | 3,606.00 | 3,594.00 | 3,581.00 | 3,680.20 | 35,655.40 |
| 3606 Grounds/Painter | 2,520.05 | 2,081.04 | 2,285.66 | 2,280.20 | 2,133.69 | 2,291.38 | 2,290.85 | 2,289.95 | 2,205.23 | 2,336.10 | 22,715.16 |
| 3607 Housekeeping | 1,936.30 | 1,565.70 | 1,736.80 | 1,735.30 | 1,624.90 | 1,751.00 | 1,742.00 | 1,761.00 | 1,750.80 | 1,814.70 | 17,420.50 |
| 3608 Overtime | 70.43 | 29.46 | 44.85 | 114.98 | 690.54 | 103.96 | 359.48 | 146.93 | 111.23 | 341.56 | 2,013.44 |
| 3610 Accounting | 1,706.91 | 1,706.91 | 1,706.91 | 1,706.91 | 1,706.91 | 1,706.91 | 1,706.91 | 1,706.91 | 1,706.91 | 1,706.91 | 17,069.10 |
| 3612 Cabana Person | | | | | 689.42 | 900.61 | 685.10 | 408.22 | | | 2,683.35 |
| 3621 Leasing Bonuses | 700.00 | 7,955.00 | 4,070.00 | 3,445.00 | 3,220.00 | 3,100.00 | 3,300.00 | 3,300.00 | 3,975.00 | 5,943.00 | 39,008.00 |
| 3622 Payroll Taxes | 2,450.67 | 3,109.44 | 2,080.20 | 2,280.11 | 2,070.60 | 2,338.20 | 2,176.10 | 3,008.28 | 2,061.39 | 2,457.54 | 24,032.73 |
| 3623 Worker's Compensation | | | | | (5,457.00) | | 1,124.50 | 1,124.50 | 3,373.50 | 1,134.50 | 1,300.00 |
| 3624 Health Insurance | 2,756.60 | 2,756.60 | 2,756.60 | 1,211.75 | 1,724.25 | 1,255.00 | 1,153.50 | 1,153.50 | 331.50 | 742.50 | 15,841.80 |
| 3625 Life & Disability Insurance | 152.73 | | 137.25 | 159.52 | 159.52 | 287.09 | (1,873.86) | 168.91 | 168.91 | 168.91 | (471.02) |
| Total 3600 Payroll Expenses | $ 34,666.47 | $ 37,743.63 | 33,472.39 | 33,569.80 | 26,572.14 | 34,269.73 | 32,624.04 | 34,364.73 | 37,392.26 | 39,590.11 | 344,234.30 |
| Total 3000 Expenses | $ 172,502.80 | $ 226,282.87 | 153,533.40 | 151,368.77 | 149,032.15 | 161,169.40 | 154,101.89 | 209,223.84 | 242,833.84 | 156,152.65 | 1,776,201.52 |
| 4000 Debt Service | | | | | | | | | | | 0.00 |
| 4001 Interest | 203,168.40 | 200,203.88 | 230,209.24 | 220,296.34 | 226,692.57 | 220,296.34 | 213,190.03 | | | | 1,514,056.76 |
| 4002 Reserve Replacement | 4,190.94 | 8,381.88 | 4,190.94 | 4,190.94 | | 4,190.94 | 4,190.94 | | | | 33,527.52 |
| 4003 Debt Service Interest Wrightwood | 44,664.56 | 44,664.56 | 40,342.18 | | 87,888.16 | 242,341.22 | | | | | 459,900.68 |
| Total 4000 Debt Service | $ 252,023.90 | $ 253,250.30 | 274,742.36 | 224,487.28 | 316,771.67 | 466,829.50 | 217,380.97 | $ - | $ - | $ - | 2,007,484.96 |
| 5000 Capital Improvements | | | | | | | | | | | 0.00 |
| 5001 Appliances | | 556.90 | 726.31 | 1,260.86 | 939.01 | 160.21 | 1,687.04 | 524.48 | 764.47 | | 6,619.28 |
| 5003 Building Improvements | | | | | | 640.94 | 2,018.86 | 1,918.19 | | | 4,577.99 |
| 5004 Floor Coverings | | | | 1,055.89 | | 2,455.46 | 4,654.87 | 2,308.47 | 1,331.43 | 3,922.19 | 15,728.31 |
| 5005 HVAC | | | | 205.65 | | | 527.16 | | | 209.91 | 942.72 |
| 5007 Plumbing | | | 1,339.02 | | | | | | | | 1,339.02 |
| 5008 Landscaping-New | | | 2,760.00 | | 3,788.75 | | 600.00 | 1,704.94 | | | 8,853.69 |
| 5010 Pool | | | | | | 664.55 | | | 909.30 | | 1,573.85 |
| 5011 Computer Software | | | | 390.00 | | 243.56 | 1,190.00 | | 552.10 | | 2,375.66 |
| 5014 Fitness Equipment | | | | | | | | | | 2,496.18 | 2,496.18 |
| 5060 Audit Costs | | | 5,000.00 | | | | | | | | 5,000.00 |
| Total 5000 Capital Improvements | $ - | 556.90 | 9,825.33 | 2,912.40 | 4,727.76 | 4,164.72 | 10,677.93 | 6,456.08 | 3,557.30 | 6,628.28 | 49,506.70 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Expenses | $ 424,528.70 | $ 480,080.07 | $ 438,101.09 | $ 378,768.45 | $ 472,531.58 | $ 632,162.62 | $ 382,160.70 | $ 215,679.92 | $ 246,391.14 | $ 162,780.93 | 3,833,193.20 |
| | | | | | | | | | | | |
| Net Operating Income | $ (31,220.28) | $ (110,605.90) | $ (63,429.80) | $ 30,392.86 | $ (109,360.86) | $ (268,989.62) | $ (24,115.07) | $ 115,371.32 | $ 80,410.84 | $ 136,191.92 | (244,354.59) |
| Other Expenses | | | | | | | | | | | |
| 6000 Depreciation | | | | | | | | | | | 0.00 |
| 6010 Buildings | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 123,558.11 | 1,235,581.10 |
| 6012 Appliances | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 14,505.33 | 16,884.67 | 14,505.33 | | 147,432.64 |
| 6014 Parking Lots/Walks | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 2,195.94 | 21,959.40 |
| 6016 Signage, Landscaping & Misc Site Improvements | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 1,376.22 | 13,762.20 |
| 6017 Carpets | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 7,682.75 | 76,827.50 |
| 6019 FF&E | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 14,354.83 | 143,548.30 |
| | | | | | | | | | | | |
| Total 6000 Depreciation | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 166,052.52 | $ 163,673.18 | 1,639,111.14 |
| | | | | | | | | | | | |
| Total Other Expenses | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 163,673.18 | $ 166,052.52 | $ 163,673.18 | 1,639,111.14 |
| | | | | | | | | | | | |
| Net Other Income | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (163,673.18) | $ (166,052.52) | $ (163,673.18) | (1,639,111.14) |
| | | | | | | | | | | | |
| Net Income | $ (194,893.46) | $ (274,279.08) | $ (227,102.98) | $ (133,280.32) | $ (273,034.04) | $ (430,662.80) | $ (187,788.25) | $ (48,301.86) | $ (85,641.68) | $ (28,481.26) | (1,883,465.73) |

Tuesday, Nov 23, 2010 10:12:05 AM PST GMT-8 - Accrual Basis

| Property: Vintage Park – 2011 | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Units: | 324 | 324 | 324 | 324 | 324 | 324 | 324 | 324 | 324 | 324 | 324 | 324 | 324 | | | | |
| Total Rentable Sq. Footage | 355428 | 355428 | 355428 | 355428 | 355428 | 355428 | 355428 | 355428 | 355428 | 355428 | 355428 | 355428 | 355428 | | | | |
| Turnover % OF MONTHLY TURNOVER HERE (40% IF MEETING RENEWAL GOAL) | 40% | 40% | 40% | 40% | 40% | 40% | 40% | 40% | 40% | 40% | 40% | 40% | 40% | | | | |
| Average Rental Rate:GROSS POTENTIAL DIVIDED BY NUMBER OF UNITS | | $1,422 | $1,426 | $1,430 | $1,434 | $1,438 | $1,442 | $1,446 | $1,450 | $1,454 | $1,458 | $1,462 | $1,466 | | | | |
| Number of Model Apartments | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | | | | |
| Number of 100% discount employee apartments | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | 3.4 | | | | |
| Management Fee PERCENTAGE OF MGMT FEE | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | 3.5% | | | | |
| Occupancy: BUDGETED OCCUPANCY | | 92% | 93% | 94% | 94% | 95% | 95% | 95% | 95% | 95% | 94% | 93% | 93% | | | | |
| $ Increase Per Unit | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | | | | |

| Property Vintage Park –2011 | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 | Total | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income | | | | | | | | | | | | | | | | |
| 2000 Income | | | | | | | | | | | | | | | | |
| 2001 Rental Income | | | | | | | | | | | | | | | | |
| 2002 Market Rent | 460,754.00 | 462,050.00 | 463,346.00 | 464,642.00 | 465,938.00 | 467,234.00 | 468,530.00 | 469,826.00 | 471,122.00 | 472,418.00 | 473,714.00 | 475,010.00 | 5,614,584.00 | 5,726,876 | 5,841,413 | 5,958,241 |
| 2003 Loss to Old Lease | (52,348.68) | (51,108.12) | (50,793.56) | (50,465.76) | (50,167.56) | (49,944.16) | (49,720.36) | (49,496.56) | (49,298.00) | (49,068.68) | (48,831.36) | (50,227.56) | (601,468.76) | (613,498) | (625,768) | (638,283) |
| 2005 Rental Concessions | (79,300.00) | (82,365.00) | (84,650.00) | (84,560.00) | (82,940.00) | (83,460.00) | (85,620.00) | (85,602.00) | (83,260.00) | (81,340.00) | (80,950.00) | (78,530.00) | (992,577.00) | (1,012,429) | (1,032,677) | (1,053,331) |
| 2006 Concession Payback Penalty | | | | | | | | | | | | | 0 | 0 | 0 | 0 |
| 2007 Vacancy Loss | (36,880.32) | (32,343.00) | (27,800.76) | (27,876.52) | (23,296.90) | (23,361.70) | (23,426.50) | (23,491.30) | (23,556.10) | (28,345.08) | (33,159.88) | (33,250.70) | (336,771.35) | (343,507) | (350,377) | (357,384) |
| 2009 Employee Apartment | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (3,100.00) | (37,200.00) | (37,944) | (38,703) | (39,477) |
| 2010 Model Apartment | (2,844.16) | (2,852.16) | (2,860.16) | (2,868.16) | (2,876.16) | (2,884.16) | (2,892.16) | (2,900.16) | (2,908.16) | (2,916.16) | (2,924.16) | (2,932.16) | (34,657.83) | (35,351) | (36,058) | (36,779) |
| 2012 Past Due End of Prior Month | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2014 Prepaid End of Prior Month | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2016 Prepaid End of Current Month | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2018 Past Due End of Current Month | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 2020 Write-Off to Collections | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| Total 2001 Rental Income | 286,300.84 | 290,281.22 | 294,141.52 | 295,769.56 | 303,556.98 | 304,483.98 | 303,770.98 | 305,235.98 | 309,001.74 | 307,648.08 | 304,748.50 | 306,969.58 | 3,611,908.95 | 3,684,147 | 3,757,830 | 3,832,987 |
| Total 2000 Income | 286,300.84 | 290,281.22 | 294,141.52 | 295,769.56 | 303,556.98 | 304,483.98 | 303,770.98 | 305,235.98 | 309,001.74 | 307,648.08 | 304,748.50 | 306,969.58 | 3,611,908.95 | 3,684,147 | 3,757,830 | 3,832,987 |
| | | | | | | | | | | | | | 4,803,573.76 | | | |
| 2300 Other Income | | | | | | | | | | | | | | | | |
| 2301 Application Fees | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 14,400.00 | 14,688 | 14,982 | 15,281 |
| 2302 Amenity Fees | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 | 12,240 | 12,485 | 12,734 |
| 2305 Attorney Fees | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2307 Damages | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 4,200.00 | 4,284 | 4,370 | 4,457 |
| 2309 Forfeited Deposits | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2311 Late Fees | 430.00 | 430.00 | 430.00 | 430.00 | 430.00 | 430.00 | 430.00 | 430.00 | 430.00 | 430.00 | 430.00 | 430.00 | 5,160.00 | 5,263 | 5,368 | 5,476 |
| 2312 Storage | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2314 Cable Income | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 | 3,672 | 3,745 | 3,820 |
| 2315 Miscellaneous Income | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 19,200.00 | 19,584 | 19,976 | 20,375 |
| 2317 NSF Fees | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 | 1,224 | 1,248 | 1,273 |
| 2318 Pet Fees | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,000.00 | 3,060 | 3,121 | 3,184 |
| 2319 Short Term Lease | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2321 Termination Fees | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2323 Vending Income | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |



tabbles®

EXHIBIT
C-3

| Property Vitage Park -2011 | | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 | Total | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2325 Water Reimbursement | | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 6,700.00 | 80,400.00 | 82,008 | 83,648 | 85,321 |
| 2326 Trash Reimbursement | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2327 Gas Reimbursement | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2328 Electricity Reimbursement | | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 4,580.00 | 4,651 | 4,744 | 4,839 |
| 2329 Water Connection Fee | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2330 Keys/Locks & Cards | | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 60.00 | 720.00 | 734 | 749 | 764 |
| 2331 Month to Month | | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 7,200.00 | 7,344 | 7,491 | 7,641 |
| 2332 Carpet Fees | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2333 Cleaning Fees | | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 | 2,448 | 2,497 | 2,547 |
| 2334 Garages/Carports 31,000 collected in 2009 | | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 45,000.00 | 45,900 | 46,818 | 47,754 |
| 2335 Gate Remote | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2336 Laundry | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2337 Interest | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2338 Washer/Dryer | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2339 Transfer Fees | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 2345 Corporate Apartment Furniture Rental | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| Total 2300 Other Income | | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 16,920.00 | 203,040.00 | 207,101 | 211,243 | 215,468 |
| Total Income | | 303,220.84 | 307,201.22 | 311,061.52 | 312,689.58 | 320,476.98 | 321,403.98 | 320,690.98 | 322,165.98 | 325,921.74 | 324,568.08 | 321,668.50 | 323,689.58 | 3,814,549.96 | 3,891,248 | 3,969,073 | 4,048,454 |
| Property Vitage Park -2011 | | | | | | | | | | | | | | 308,100.22 | | | |
| Expenses | | | | | | | | | | | | | | | | | |
| 3000 Expenses | | | | | | | | | | | | | | | | | |
| 3100 Taxes & Insurance | | | | | | | | | | | | | | | | | |
| 3101 Property Taxes | | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 70,000.00 | 840,000.00 | 856,800 | 873,936 | 891,415 |
| 3102 Business License | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 3103 Pool Permits | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 3110 Property Insurance | | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 7,603.90 | 91,246.85 | 93,072 | 94,933 | 96,832 |
| 3112 Other Insurance | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 3115 Tax Consultants | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 3116 Other Taxes & Fees CT corp | | | | | | | | 710.00 | | | | | | 710.00 | 724 | 739 | 753 |
| Total 3100 Taxes & Insurance | | 77,603.90 | 77,603.90 | 77,603.90 | 77,603.90 | 77,603.90 | 77,603.90 | 78,313.90 | 77,603.90 | 77,603.90 | 77,603.90 | 77,603.90 | 77,603.90 | 931,956.85 | 950,596 | 969,608 | 989,000 |
| 3200 Professional Fees | | | | | | | | | | | | | | 1,065,800.00 | | | |
| 3202 Eviction Attorney Fees | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 | 1,224 | 1,248 | 1,273 |
| 3203 Apartment Association Fees | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3204 Management Fees | | 10,612.73 | 10,752.04 | 10,887.15 | 10,944.13 | 11,216.69 | 11,249.14 | 11,224.18 | 11,275.46 | 11,407.26 | 11,359.88 | 11,258.40 | 11,336.14 | 133,523.21 | 136,194 | 138,918 | 141,696 |
| 3206 Accounting Fees Audit prep fee TR prep | | 615.63 | 615.63 | 615.63 | 615.63 | 615.63 | 615.63 | 615.63 | 615.63 | 615.63 | 615.63 | 615.63 | 615.63 | 7,387.50 | 7,535 | 7,686 | 7,840 |
| 3207 Legal Fees | | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 3,696.51 | 44,358.13 | 45,245 | 46,150 | 47,073 |
| 3208 Other Professional/Consult/Fees CT corp | | 87.48 | 87.48 | 87.48 | 87.48 | 87.48 | 87.48 | 87.48 | 87.48 | 87.48 | 87.48 | 87.48 | 87.48 | 1,049.76 | 1,071 | 1,092 | 1,114 |
| 3209 Employee Background Check | | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 1,801.07 | 1,837 | 1,874 | 1,911 |
| Total 3200 Professional Fees | | 15,262.43 | 15,401.75 | 15,536.86 | 15,593.84 | 15,865.40 | 15,898.84 | 15,873.89 | 15,925.16 | 16,056.97 | 16,009.59 | 15,908.10 | 15,985.84 | 189,319.68 | 193,106 | 196,968 | 200,908 |
| 3300 Utilities | | | | | | | | | | | | | | 192,057.59 | | | |
| 3301 Electric - Common Area | | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 84,000.00 | 85,680 | 87,394 | 89,141 |
| 3302 Electric - Vacant | | 1,296.00 | 1,296.00 | 1,134.00 | 972.00 | 972.00 | 810.00 | 810.00 | 810.00 | 810.00 | 810.00 | 972.00 | 1,134.00 | 11,826.00 | 12,063 | 12,304 | 12,550 |
| 3303 Gas - Common Area | | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 | 6,120 | 6,242 | 6,367 |
| 3304 Gas - Vacant | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3305 Water Irrigation | | 1,200.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 2,000.00 | 2,000.00 | 2,000.00 | 4,000.00 | 4,000.00 | 1,500.00 | 1,500.00 | 24,200.00 | 24,684 | 25,178 | 25,681 |
| 3307 Water - Common Area | | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 10,900.00 | 130,800.00 | 133,416 | 136,084 | 138,806 |
| 3309 Water - Vacant | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |

| Property Vintage Park -2011 | | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 | Total | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3310 Trash Removal | | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 1,380.00 | 16,560.00 | 16,891 | 17,229 | 17,574 |
| 3311 Cable | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 | 1,224 | 1,248 | 1,273 |
| Total 3300 Utilities | | 22,376.00 | 22,676.00 | 22,514.00 | 22,352.00 | 22,352.00 | 22,690.00 | 22,690.00 | 22,690.00 | 24,690.00 | 24,690.00 | 22,352.00 | 22,514.00 | 274,596.00 | 280,078 | 285,679 | 291,393 |
| Property Vintage Park -2011 | | | | | | | | | | | | | | 235,982.85 | | | |
| 3400 Repair & Maintenance | | | | | | | | | | | | | | | | | |
| 3401 Appliance Contract/Repairs | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3403 Appliance Parts & Supplies | | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 | 3,672 | 3,745 | 3,820 |
| 3405 Auto/Truck/Cart Repairs | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3406 Bulbs & Ballasts | | 370.00 | 370.00 | 370.00 | 370.00 | 370.00 | 370.00 | 370.00 | 370.00 | 370.00 | 370.00 | 370.00 | 370.00 | 4,440.00 | 4,529 | 4,619 | 4,712 |
| 3407 Carpet/Vinyl Repairs | | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 600.00 | 612 | 624 | 637 |
| 3408 Carpet Cleaning Contract | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3410 Carpet Cleaning Supplies | | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 600.00 | 612 | 624 | 637 |
| 3412 Cleaning Contract | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3414 Cleaning Supplies | | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800.00 | 4,896 | 4,994 | 5,094 |
| 3416 Paint Purchase | | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 | 2,448 | 2,497 | 2,547 |
| 3418 Electrical Repair/Maintenance Contract | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3420 Electrical Supplies | | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 130.00 | 1,560.00 | 1,591 | 1,623 | 1,655 |
| 3422 Exterior Building | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3424 Exterminating | | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 425.00 | 5,100.00 | 5,202 | 5,306 | 5,412 |
| 3426 Fire & Safety | | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 120.00 | 122 | 125 | 127 |
| 3427 General Maintenance | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 | 1,224 | 1,248 | 1,273 |
| 3428 HVAC Repairs | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3430 HVAC Supplies | | 150.00 | 150.00 | 150.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 150.00 | 150.00 | 150.00 | 2,550.00 | 2,601 | 2,653 | 2,706 |
| 3432 Interior Building Repairs | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3434 Irrigation Repairs | | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 120.00 | 122 | 125 | 127 |
| 3436 Keys & Locks | | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 600.00 | 612 | 624 | 637 |
| 3438 Landscape Contract | | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 3,008.00 | 36,096.00 | 36,818 | 37,554 | 38,305 |
| 3440 Landscape Supplies | | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 120.00 | 122 | 125 | 127 |
| 3441 Light Fixtures | | 300.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 850.00 | 867 | 884 | 902 |
| 3442 Pagers & Radios | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3443 Painting Contract | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3444 Paint Supplies | | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 600.00 | 612 | 624 | 637 |
| 3445 Plumbing Supplies | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | -100.00 | 100.00 | 1,200.00 | 1,224 | 1,248 | 1,273 |
| 3447 Plumbing Contract/Repairs | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3448 Hardware/Doors/Knobs | | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 300.00 | 306 | 312 | 318 |
| 3449 Pool Repairs | | 200.00 | 200.00 | 200.00 | 300.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 300.00 | 200.00 | 200.00 | 3,600.00 | 3,672 | 3,745 | 3,820 |
| 3450 Pool Repairs | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3454 Blinds & Shades | | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 900.00 | 918 | 936 | 955 |
| 3456 Window/Glass Repairs | | 100.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 | 400.00 | 408 | 416 | 424 |
| 3458 Cabinet Repairs | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3459 Resurfacing | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3460 Maintenance Training | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3465 Gate/Remote Repairs | | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 1,500.00 | 1,530 | 1,561 | 1,592 |
| Total 3400 Repair & Maintenance | | 6,238.00 | 5,888.00 | 5,888.00 | 6,213.00 | 6,213.00 | 6,213.00 | 6,213.00 | 6,213.00 | 6,213.00 | 6,088.00 | 5,888.00 | 5,888.00 | 73,256.00 | 74,721 | 76,216 | 77,740 |
| Property Vintage Park -2011 | | | | | | | | | | | | | | 99,700.00 | | | |
| 3500 Administrative Expenses | | | | | | | | | | | | | | | | | |
| 3501 Ads Print & Magazines | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3502 Marketing Expenses | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3503 Ads Billboard | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3505 Ads Online | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3507 Ads Booting Signs/Flyers | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |

| Property Vintage Park -2011 | | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 | Total | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3509 Ads Other/Coasters | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3511 Ads Help Wanted | | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 900.00 | 918 | 936 | 955 |
| 3512 Apartment Locator Services | | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 33,600.00 | 34,272 | 34,957 | 35,657 |
| 3513 Travel Auto/Plane | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3516 Travel Hotel | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3517 Travel Food | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3518 Credit Check Fees | | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 7,200.00 | 7,344 | 7,491 | 7,641 |
| 3520 Furniture & Fixtures | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3521 Overnight Delivery | | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 160.00 | 1,920.00 | 1,958 | 1,998 | 2,038 |
| 3522 Computer Maintenance | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3524 Computer Software | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3525 Internet Service Providers | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3526 Shopping Reports | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 | 1,224 | 1,248 | 1,273 |
| 3527 Move-In Specials | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3528 Office Equipment Leases | | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 | 3,672 | 3,745 | 3,820 |
| 3529 Office Equipment Service | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3530 Office Supplies | | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 | 3,672 | 3,745 | 3,820 |
| 3531 Postage | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 | 1,224 | 1,248 | 1,273 |
| 3532 Payroll Preparation | | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800.00 | 4,896 | 4,994 | 5,094 |
| 3533 Stationary/Name Tags | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3534 Uniforms | | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 300.00 | 306 | 312 | 318 |
| 3535 Referral Fees | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3537 Resident Retention | | 250.00 | 250.00 | 250.00 | 250.00 | 1,000.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,000.00 | 4,500.00 | 4,590 | 4,682 | 4,775 |
| 3538 Fitness Center Repairs | | 800.00 | 0.00 | 0.00 | 800.00 | 0.00 | 0.00 | 800.00 | 0.00 | 0.00 | 800.00 | 0.00 | 0.00 | 3,200.00 | 3,264 | 3,329 | 3,396 |
| 3539 Signs & Graphics | | 300.00 | 0.00 | 0.00 | 300.00 | 0.00 | 0.00 | 300.00 | 0.00 | 0.00 | 300.00 | 0.00 | 0.00 | 1,200.00 | 1,224 | 1,248 | 1,273 |
| 3540 Alarm Expenses | | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 600.00 | 612 | 624 | 637 |
| 3541 Licenses, Taxes & Permits | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3542 Telephone | | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 15,600.00 | 15,912 | 16,230 | 16,555 |
| 3545 Bank Charges | | 360.00 | 360.00 | 360.00 | 360.00 | 360.00 | 360.00 | 360.00 | 360.00 | 360.00 | 360.00 | 360.00 | 360.00 | 4,320.00 | 4,406 | 4,495 | 4,584 |
| 3546 Subscriptions & Dues | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 245.00 | 0.00 | 0.00 | 0.00 | 300.00 | 405.00 | 0.00 | 950.00 | 969 | 988 | 1,008 |
| 3547 Gate Expenses | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3548 Training | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3549 Security | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3555 Managers/Leasing Meeting | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3565 Gifts | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| Total 3500 Administrative Expenses | | 7,920.00 | 6,820.00 | 6,820.00 | 7,920.00 | 7,815.00 | 6,820.00 | 7,920.00 | 6,820.00 | 7,120.00 | 8,325.00 | 6,820.00 | 7,570.00 | 88,690.00 | 90,464 | 92,273 | 94,119 |
| Property Vintage Park -2011 | | | | | | | | | | | | | | | 157,307.87 | | |
| 3600 Payroll Expenses | | | | | | | | | | | | | | | | | |
| 3601 Property Manager | * | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 4,333.34 | 52,000.08 | 53,040 | 54,101 | 55,183 |
| 3602 Assistant Manager | * | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 2,482.00 | 29,784.00 | 30,380 | 30,987 | 31,607 |
| 3603 Leasing Agent | * | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 4,132.80 | 49,593.60 | 50,585 | 51,597 | 52,629 |
| 3604 Maintenance Techs | * | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 3,587.50 | 43,050.00 | 43,911 | 44,789 | 45,685 |
| 3605 Maintenance Supervisor | * | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 35,688.00 | 36,402 | 37,130 | 37,872 |
| 3606 Grounds/Painter | * | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 1,669.20 | 20,030.40 | 20,431 | 20,840 | 21,256 |
| 3607 Housekeeping | * | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 1,438.60 | 17,263.20 | 17,608 | 17,961 | 18,320 |
| 3609 Overtime | | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 1,058.26 | 12,699.12 | 12,953 | 13,212 | 13,476 |
| 3610 Accounting | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3612 Cabana Person | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0 | 0 | 0 |
| 3620 Regional Manager | | | | | | | | | | | | | 0.00 | 0.00 | 0 | 0 | 0 |
| 3621 Leasing Bonuses | | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 1,366.00 | 16,392.00 | 16,720 | 17,054 | 17,395 |
| 3622 Payroll Taxes - 10% | 23,041.70 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 2,761.81 | 33,141.72 | 33,805 | 34,481 | 35,170 |

| Property Vintage Park -2011 | | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 | Total | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3623 Worker's Compensation | 0.12 | 918.02 | 918.02 | 918.02 | 918.02 | 918.02 | 918.02 | 918.02 | 918.02 | 918.02 | 918.02 | 918.02 | 918.02 | 11,016.24 | 11,237 | 11,461 | 11,691 |
| 3624 Health Insurance | | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 1,325.90 | 15,910.80 | 16,229 | 16,554 | 16,885 |
| 3625 Life & Disability Insurance | | 247.55 | 247.55 | 247.55 | 247.55 | 247.55 | 247.55 | 247.55 | 247.55 | 247.55 | 247.55 | 247.55 | 247.55 | 2,970.60 | 3,030 | 3,091 | 3,152 |
| Total 3600 Payroll Expenses | | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 28,294.98 | 339,533.76 | 346,331 | 353,257 | 360,322 |
| Total 3000 Expenses | | 157,695.32 | 156,694.63 | 156,657.74 | 157,977.72 | 158,145.29 | 157,520.73 | 159,405.77 | 157,647.05 | 169,978.93 | 161,011.47 | 156,865.89 | 157,856.72 | 1,897,348.29 | 1,935,295.25 | 1,974,001.16 | 2,013,481.18 |
| | | | | | | | | | | | | | | 433,899.00 | | | |
| | | | | | | | | | | | | | | | | | |
| NOI BEFORE DEBT SERVICE & CAP. IMP. | | 145,525.52 | 150,516.59 | 154,403.78 | 154,711.84 | 162,331.79 | 163,893.25 | 161,295.21 | 164,608.93 | 165,942.89 | 163,556.61 | 164,801.51 | 166,032.85 | 1,917,600.67 | 1,955,953 | 1,995,072 | 2,034,973 |
| | | | | | | | | | | | | | | | | | |
| 4000 Debt Service | | | | | | | | | | | | | | | | | |
| 4001 Interest | | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 115,667.00 | 1,388,004.00 | 1,388,004 | 1,388,004 | 1,388,004 |
| 4002 Reserve Replacement | | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 4,168.00 | 50,016.00 | 50,016 | 50,016 | 50,016 |
| Total 4000 Debt Service | | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 119,835.00 | 1,438,020.00 | 1,438,020 | 1,438,020 | 1,438,020 |
| 5000 Capital Improvements | | | | | | | | | | | | | | 1,438,020.00 | | | |
| 5001 Appliances | | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 | 12,240 | 12,485 | 12,734 |
| 5002 Concrete | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5003 Building Improvements | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5004 Floor Coverings | | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 36,000.00 | 36,720 | 37,454 | 38,203 |
| 5005 HVAC | | | | | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | | | | 7,200.00 | 7,344 | 7,491 | 7,641 |
| 5006 Hot Water Heater | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5007 Plumbing | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5008 Landscaping – New | | 1,400.00 | 7,500.00 | 3,800.00 | 2,700.00 | | 3,800.00 | | | | 3,800.00 | | | 23,000.00 | 23,460 | 23,929 | 24,408 |
| 5009 Roof Repairs | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5010 Pool Repairs/Furniture | | 4,975.00 | | | | | | | | | | | | 4,975.00 | 5,075 | 5,176 | 5,280 |
| 5011 Computer Software | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5012 Computer Hardware | | 700.00 | | | | | | | | | | | | 700.00 | 714 | 728 | 743 |
| 5014 Fitness Equipment | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5015 Radios & Pagers | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5016 Exterior Painting / Staining | | 2,000.00 | | | | | | | | | | | | 2,000.00 | 2,040 | 2,081 | 2,122 |
| 5018 Key Track System | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5020 Brochures Collateral Material | | | 3,000.00 | | | | | | 3,000.00 | | | | | 6,000.00 | 6,120 | 6,242 | 6,367 |
| 5025 Termite Bond | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5026 Hepa Vacuum, Wet Vac | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| 5060 Audit Costs | | | | | | | | | | 15,000.00 | | | | 15,000.00 | 15,300 | 15,606 | 15,918 |
| 5075 Replacement Reimbursements | | | | | | | | | | | | | | 0.00 | 0 | 0 | 0 |
| Total 5000 Capital Improvements | | 13,075.00 | 14,500.00 | 7,800.00 | 7,900.00 | 5,200.00 | 9,000.00 | 5,200.00 | 8,200.00 | 20,200.00 | 7,800.00 | 4,000.00 | 4,000.00 | 106,875.00 | 109,013 | 111,193 | 113,417 |
| | | | | | | | | | | | | | | 95,800.00 | | | |
| Net Income | | 12,615.52 | 16,181.59 | 26,768.78 | 26,976.84 | 37,296.70 | 35,048.25 | 36,250.21 | 36,573.93 | 25,907.89 | 35,921.61 | 40,966.51 | 42,197.85 | 372,705.67 | 408,920 | 445,859 | 483,537 |
| | | | | | | | | | | | | | | 372,705.67 | | | |
| 5075 Replacement Reimbursements | | | | 35,375.00 | | | 22,100.00 | | | 18,600.00 | | | 15,600.00 | 91,675.00 | 93,713 | 95,587 | 97,498 |
| | | | | | | | | | | | | | | | | | |
| Net Income after reserve replacements | | 12,615.52 | 16,181.59 | 62,143.78 | 26,976.84 | 37,296.70 | 57,148.25 | 36,250.21 | 36,573.93 | 44,507.89 | 35,921.61 | 40,966.51 | 57,997.85 | 464,580.67 | 502,632.68 | 541,445.74 | 581,035.05 |
| | | | | | | | | | | | | | | 464,580.67 | | | |

**NOTES:**

**Projections:**

The increase in come is based upon historical data. Typically what we find is we can renew our existing resident 10 to 15 dollars per month higher than what they are paying now. This helps offset any concession we may have to offer new residents coming in off the street.  We will turn over about 65% of the property in each of the future years.  This equates to 2,511.00 per month rental increase. We also feel concessions will slowly burn off.

**Expenses:**

Our typical increase on expenses is about 2% from year to year. Vintage is a class A property with very low maintenance cost. There is no deferred maintenance whatsoever. We continue to paint, clean, and shampoo all make ready turn in-house. Doing our turns in-house helps reduce cost of supplies and allows us to deliver better quality to the residents. We constantly manage our budgeted line items, paying close attention to providing good service without over stocking parts in our maintenance shops. As it relates to advertising, we closely monitor our cost and buy advertising in bulk for 3 properties rather than just one.

# EXHIBIT D

# LIQUIDATION ANALYSIS

### *IRH Liquidation Analysis*

| Assets | | Liabilities | |
|---|---|---|---|
| Real Property: | $34,700.00 (From Liquidation of Real Property)[1] | Secured Claim: (estimated to receiver approximately $34 million or 82%)[5] | $41,600,000 |
| | | Property Taxes: | $820,000[6] |
| Cash: | $427,081[2] | | |
| Accounts Receivable: | $0[3] | Chapter 11 Administrative Claims | |
| | | Claims: | $0[7] |
| Other Assets: | $699,189[4] | | |
| | | Chapter 7: | $0 |
| Total: | $35,826,270 | | |
| | | General Unsecured Claims: | $0 |

[1] This value is inclusive of furniture, fixtures and equipment.

[2] As of the September 30, 2010 Monthly Operating Report (this is cash collateral that in a liquidation would go to the secured lender).

[3] As of the September 30, 2010 Monthly Operating Report there were reported accounts receivable in the amount of $1,034,840.   However, these are largely past due rents which are uncollectible and intercompany balances which will be offset.   Thus, the true value is zero.

[4] As of the September 30, 2010 Monthly Operating Report, these amounts are held in escrow by the lender for property taxes, insurance and reserves

[5] Proceeds of sale less commissions plus cash collateral on hand.

[6] Should be paid in full from tax escrow.

[7] After payment of secured debt and taxes, there are no funds to pay any other claims.



| | |
|---|---|
| | Chapter 7 Liquidation Scenario |
| In the event of conversion to Chapter 7, the real property will probably be foreclosed upon by the secured creditor and cash collateral will be turned over to the secured creditor.  Property taxes will be paid from the escrow.  There will be no funds to be administrative expenses or other creditors. | |

### *VPI LIQUIDATION ANALYSIS*

The only asset of VPI is its limited partnership interest in IRH.  The value of this asset will be wiped out in a Chapter 7 and creditors will receive zero.

### *VP GP LIQUIDATION ANALYSIS*

The only asset of VP GP is its general partnership interest in IRH.  The value of this asset will be wiped out in a Chapter 7 and creditors will receive zero.

# EXHIBIT E


# ORGANIZATIONAL CHART OF DEBTORS



1651381 v04